O’NIELL, Chief Justice.
 

 The plaintiff is complaining of a judgment rendered by the civil district court and affirmed by the court of appeal dismissing her suit on a plea of prescription. The suit is for damages for personal injuries alleged to have been inflicted upon the plaintiff’s child, who is alleged to have been struck by an automobile owned and operated by the State Department of Agriculture and Immigration. The defendant, American Employers’ Insurance Company, is being sued for having issued a public liability insurance policy on the automobile. The plaintiff first sued the Employers’ Liability Assurance Corporation, Ltd., believing that that company had issued the insurance policy; but, when the case came on for trial, the defendant, the Employers’
 
 *26
 
 Liability Assurance Corporation, Ltd., disclosed that the policy was issued by the American Employers’ Insurance Company, and the judge dismissed the plaintiff’s suit. The original suit was brought within the year after the accident happened, and was not barred by prescription, but at the time when that suit was dismissed the year had expired. The plaintiff promptly — on the seventh day after her first suit was dismissed — brought this suit against the American Employers’ Insurance Company.
 

 The only question presented is whether the bringing of the first suit interrupted prescription. The Employers’ Liability Assurance Corporation, Ltd., against which the first suit was brought, and the American Employers’ Insurance Company, against which the present suit was brought, are separate and distinct corporations. But the two corporations, together with the Employers’ Fire Insurance Company, are doing business in this state and throughout the United States as a group of insurance companies under the title “The Employers’ Group, of Boston, Massachusetts”. Their letterhead bears that title, and in the upper right-hand corner the three members of the group are listed, the Employers’ Liability Assurance Corporation, Ltd., being at the top of the list, the Employers’ Fire Insurance Company being next on the list, and the American Employers’ Insurance Company being third on the list. The letterhead discloses that the group of companies, or each one of the three companies, has one and the same office for its claim depart-, ment, which is indicated on the letterhead thus: “Gulf Claim Department, Hibernia Bank Building, New Orleans, Louisiana”. The three companies have one and the same agent, namely, the Secretary of State, for service of process upon any one of them. They have the same local attorneys, and have one and the same manager of their claim department, and one office and one force of employees for that department. The three companies have the same telephone number, Magnolia 4154, listed in the telephone book under the name of each company. As to two of the companies, namely, the Employers’ Liability Assurance Corporation, Ltd., which was sued originally, and the American Employers’ Insurance Company, defendant in this suit, the telephone number is listed as being in their “Underwriting and Claims Department”. These facts, showing the close business relation of the group of companies, are disclosed by the record and were admitted frankly in the argument of the case. The attorney who brought • the first suit died before it came to trial. The attorney who succeeded him as attorney for the plaintiff was unable to explain why that suit was brought against the wrong company, but assumed that the cause of the mistake was that the company against which the suit was brought is the only one on the list whose name indicates that it is a
 
 liability
 
 insurance company. The attorney who brought the original suit first miade written demand for payment of the claim. The attorney now representing the plaintiff stated in his argument, and it was not disputed, that no copy of the letter could be found among the papers of the deceased attorney. But there is no doubt that the letter was received by the manager for the claim de
 
 *28
 
 partment of the three insurance companies, because he acknowledged receipt on the next day after the date of the demand, thus: “Re: Ernest Jack son. Your letter of February 14th [which was the day previous to the date of the manager’s letter] was received. I attempted to communicate with your office today by telephone, but was advised that you were out of the city. At your convenience, if you will telephone the writer at Magnolia 4154 for an appointment, I will be glad to discuss this matter with you at any time.” The letter is signed by the individual who was the manager of the claims department for the three companies. Although he did not sign the letter in a representative capacity for any one of the companies, it must have been written for the American Employers’ Insurance Company, the defendant in the present suit, because the writer of the letter was aware that that company had issued the policy and that neither of the two other companies was concerned in the matter about which the letter was written. The statement in this letter to the attorney for the plaintiff, that the claims manager would be glad to discuss the matter with the attorney at any time, could not have been written for or on behalf of any of the three companies except the one that was interested in a discussion of the matter with the attorney for the claimant. The only purpose for the proposed discussion of the matter was that the company that had issued the policy would have an opportunity either to deny or admit liability, and to attempt to adjust the claim if the company should admit liability. The defendant in this case was not asked to produce — and did not offer to produce — the letter received from the attorney who filed the original suit. But the answer to the letter is a sufficient showing of its purport, and it tended to keep the attorney misled until the period of prescription had expired.
 

 Act 371 of 1940 requires the Casualty and Surety Rating Commission to furnish to any claimant or to the attorney for any claimant, upon his request being made at any reasonable time, the name of the employer’s insurer or insurers in compensation matters, or the name of the insurer with regard to personal injury claims. But there was no such law at the time when the plaintiff in this case filed her suit originally against the wrong insurance company.
 

 The manager of the claim department for the group of insurance companies, of course, could not render the Employers’' Liability Assurance Corporation, Ltd., liable on the policy issued by the American Employers’ Insurance Company; but there is no doubt that the letter written by him in the regular course of his employment as claims manager for both companies unintentionally led the attorney to believe that his client’s claim was made upon the company that had issued the policy. The original suit,' having been brought against the company that had not issued the policy, could not have resulted in a judgment either against that company or against the company that had issued the policy. But the filing of the suit gave sufficient notice to* the company that had issued the policy to* interrupt prescription. The causes for which the attorney for the plaintiff was. misled until the period of prescription had
 
 *30
 
 run are attributable to the method of doing business by the claims department of both the defendant in this suit'and the defendant in the original suit. There is no accusal ion — and no evidence or suggestion— of any wilful deception on the part of the manager of the claims department of the Employers’ Group. But, in the circumstances of this case, it would be unjust to hold that the filing of the original suit did not interrupt prescription.
 

 An appropriate precedent for a ruling in this case is the ruling made by the court of appeal in the case of Norwich Union Indemnity Co. v. Judlin & Whitmire, 7 La. App. 379. That was a suit for damages for personal injuries resulting from the operation of a motor truck owned and operated by a corporation named Peter Judlin, Inc. The suit was brought originally against Peter Judlin as owner of the truck, but on the trial of the case it was shown that the truck was owned and operated by the corporation called Peter Judlin, Inc., of which Peter Judlin was president. The suit had been brought against him individually. Thereafter the plaintiff filed a supplemental petition praying for judgment against the corporation, Peter Judlin, Inc. Meanwhile the year had elapsed from the time of the accident; hence the Peter Judlin,. Inc., pleaded prescription. The court of appeal overruled the plea, saying that the suit and citation against Peter Judlin individually “though insufficient to base a judgment against Peter Judlin, Inc., was sufficient to interrupt prescription against the latter”. The Peter Judlin, Inc., applied to this court for a writ of review, but the court denied the application on the ground that the ruling or decree, overruling the plea of prescription, was correct. The court of appeal in that case cited in support of its decision the case of Gueble v. Town of Lafayette [inadvertently giving the title as Campbell v. Hart], 118 La. 494, 43 So. 63, 64, where it was held that a citation addressed 'to the mayor of the Town of Lafayette, although it was not sufficient to sustain a judgment against the town, was sufficient to interrupt prescription of the claim against the town. In that case, the principle underlying the rule, that a citation addressed to the wrong party may give sufficient information to the 'right party to cause an interruption of the period of prescription of the claim against him, even though the citation could not be the basis for a valid judgment against either party, was stated thus:
 

 . “There can be no doubt that through those papers he [the mayor] received judicial knowledge of the fact that the plaintiff had filed a demand against the town of Lafayette in the district court, what that demand was, and what the petition prayed’ for, He was as fully informed on those points as if the citation which he received had been addressed to the town of Lafayette, and had been placed in his hands. He was the proper person and the only necessary person to whom that knowledge should be conveyed. The fact that the citation was not addressed to the town of Lafayette did not do away with the knowledge which the papers, which were actually served upon him, had conveyed. But, as the citation, which was served upon him, did not order the town of Lafayette to appear and
 
 *32
 
 answer the petition, he had to wait until the town had been ordered to do so. The town was not bound to do so, and until it had been so ordered, the mayor was not called upon on its behalf to appear and answer, though he was fully informed of all the 'facts necessary to be known in the premises, nor to waive the right of the.town to decline taking action in the case until the mandate of the court had been issued to it and reached him as mayor, and therefore matters, so far as a prosecution of the case was concerned, were held in abeyance until that formality should be complied with. While we hold that matters for that purpose were stayed, we hold that the knowledge brought home to the mayor, who was the proper person to whom that knowledge should have been conveyed, had the effect of interrupting the running of prescription.”
 

 The Lafayette case may be distinguished from this case in that the only error made in the Lafayette case was that the citation was addressed originally to the wrong party, whereas in this case the suit was brought originally against the wrong party. But, under the law prevailing at the time when the Lafayette case was decided — articles 3518 and 3551 of the Civil Code — the filing of a suit against the debtor did not interrupt the period of prescription; for it required service of a citation addressed to the debtor to interrupt the period of prescription. But, now, under the provisions of Act 39 of 1932, the mere filing of a suit against the debtor interrupts the period of prescription. Therefore, since the service of a citation addressed to the wrong party was deemed sufficient to interrupt the period of prescription in the peculiar circumstances of the Lafayette case, the filing of the suit — -even against the wrong party —and the service of citation and a copy of the petition upon the right party should be held sufficient to interrupt the period of prescription in the peculiar circumstances of this case.
 

 Our conclusion is that the.plea of prescription in this case should have been overruled, and hence that the plaintiff is entitled to a hearing on the merits of her claim.
 

 The judgment complained of is annulled, the defendant’s plea of prescription is overruled, and the case is ordered remanded to the civil district court for further proceedings consistent with the opinion which we have rendered. The costs incident to the plea of prescription, including the costs of appeal and of these proceedings in this court, are to be borne by the defendant; , all other costs are to abide the final disposition of the case.
 

 ROGERS, J., absent.