ELLIS, Judge.
This suit was filed in the Parish of West Feliciana as the result of an accident which allegedly occurred on January 1, 1948 between plaintiffs automobile and a truck driven by Willie Wright and being used at that time in the business of Lewis & Lewis, a partnership domiciled in the City of West Monroe, Ouachita Parish, Louisiana, and composed of the individual members of John L. Lewis, who resided at 610 Mill St., West Monroe, Louisiana, and Ploward E. Lewis, who resides at 115 Bon Air Street, West Monroe, Louisiana.
After the allegations which described the accident, the negligent acts of the driver of the truck and the injuries suffered by the plaintiff, it was then alleged:
“15. Petitioner shows and avers that he is informed and so believing so al *231 leges that the said Lewis & Lewis, defendants herein, carried Public Liability Insurance on the said large 8-wheel truck involved in said collision, and at the time of said collision; and further shows that under the Law of Louisiana, he is entitled to proceed herein against said liability insurer, as well as the said Lewis & Lewis, but shows that he has been unable to obtain the name and identity of the insurance company carrying said liability insurance on said truck, hut avers that said company is also liable herein.
“16. Petitioner shows that said Liability Insurance Company carrying said liability insurance policy on said truck of Lewis & Lewis, and which was involved in said collision, is represented by H. P. Durrett, Insurance Adjuster of Monroe, Ouachita Parish, Louisiana, with offices in the Chase-Amman Building; and petitioner makes said liability insurer, through H. P. Dur-rett, Agent and Adjuster, a party defendant herein.”
The prayer of plaintiff’s petition was as follows:
“Wherefore, your petitioner prays that the said John T. Lewis, and the said Howard E. Lewis, both residents of the City of West Monroe, Ouachita Parish, Louisiana, be duly served with a copy of this petition, and cited herein to answer thereto; and the said H. P. Durrett, Agent and Adjuster, residing in the City of Monroe, Ouachita Parish, Louisiana, be also served with a copy of this petition, and cited to appear and to answer thereto; and that, after due proceedings had, your petitioner herein have and recover judgment against the said defendants, individually, collectively, and in solido, in the full sum of $12,500.00, together with legal interest thereon from judicial demand until paid * * *
“Prays for service and for general and equitable relief in the premises.”
The above referred to original petition was filed on December 29, 1948. On January 19, 1949 H. P. Durrett, one of the defendants, “appearing solely, only and specially for the purpose of this exception,” excepted to the citation, and on the same date the same defendant, “reserving all rights under exceptions hereto filed,” filed an exception of no right or cause of action.
On January 29, 1949 with the leave of the court first obtained, the plaintiff filed an amended petition in which it was alleged that the firm of Lewis & Lewis was composed of John G. Lewis and Pearl Lewis, both nonresidents of the State of Louisiana, and that the liability insurer of the said Lewis & Lewis on the date of the accident was the Globe Indemnity Company of New York, “and which said company has been represented by H. P. Durrett of Monroe, Louisiana, as agent and adjuster in connection with the adjustment of the damages growing out of said accident.” The amended prayer was as follows:
“Wherefore, petitioner prays that an Attorney at Law, practicing at the local bar, be appointed to represent the said absentee individual partnership of the said Lewis & Lewis, defendants herein, and that said absentee defendants be duly cited and served through said attorney appointed to represent said absentees; that the said H. P. Durrett, agent and Adjuster residing in the City of Monroe, he served with a copy of this petition and cited herein, according to law to answer thereto; that the said Globe Indemnity Company of New York, be duly cited herein, and served with a copy of the petition, through the Honorable Wade O. Martin, Jr., Secretary of State for the State of Louisiana, and that, after due proceedings had, your petitioner herein have and recover judgment against the said defendants, individually, collectively and in solido in the full sum of $12,500.00, together with legal interest thereon from judicial demand, until paid.
“Prays for all necessary orders, and for service herein, and for general and equitable relief in the premises.”
Attached to this amended petition is an order apparently written by counsel for *232 plaintiff with the day of the month filled in by the District Judge at the time of signing. This order was in the following language:
“Considering the above and foregoing application, and the law in such cases made and provided,
“It is ordered that Richard H. Kil-bourne, an Attorney at Law practicing at the local bar be, and he is hereby appointed to represent the absent defendants, John G. Lewis and Pearl Lewis,
“It is further ordered that the amended petition be allowed filed and served according to law, and that a copy of the original petition, as well as the amended petition, be served upon the parties named in said petition, all according to law, and as the law requires.
“Thus done and signed on this, the 26th day of January, A.D. 1949.
H. H. Kilbourne, Judge 20th Judicial District Court”
On February IS, 1949 John G. and Pearl Lewis filed exceptions to the jurisdiction ratione personae, and H. P. Durrett filed another exception of no right or cause of action and one to the citation insofar as the supplemental petition was concerned. The Globe Indemnity Company plead prescription of one year.
Apparently acting under the order of the court quoted above wherein Richard H. Kilbourne was appointed to represent the absent defendants John G. Lewis and Pearl Lewis, citation was issued to “Lewis & Lewis, John G. Lewis, Natchez, Miss., through Richard H. Kilbourne, Attorney-ad-hoc,” and “Lewis & Lewis, Pearl Lewis, Orange, Texas, through Richard H. Kil-bourne, Attorney-ad-hoc.” As a result of these citations, the curator-ad-hoc excepted to the citation on the ground that he was appointed to act only for the absent defendants, John G. Lewis and Pearl Lewis, and therefore no order of court had been signed appointing him as curator-ad-hoc for Lewis & Lewis, and on the second ground that said Lewis & Lewis was alleged to be domiciled in the City of West Monroe, Louisiana, and there was no authority under the law for an appointment of a curator-ad-hoc in such a case.
The Lower Court overruled the exception to the jurisdiction stating testimony should be taken to determine whether the Globe Indemnity Company and the firm of Lewis & Lewis had such notice as would interrupt prescription prior to the filing of the amended petition, and as authority for such relied upon the case of Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209. Ruling on the exceptions was withheld pending the taking of further testimony.
On August 7, 1951 the testimony was taken and on February 13, 1952 the trial court with written reasons sustained all the exceptions except the one to the citations, filed by PI. P. Durrett, and recalled his original ruling in which he had overruled the plea to the jurisdiction, sustained the same and sustained the plea of prescription of one year filed on the part of Globe Indemnity Company.
From this judgment the plaintiff has appealed.
Plaintiff strenuously contends under the original as well as the supplemental petitions that the suit was against Lewis & Lewis. This question is to be settled by the prayer of the petition. Louisiana Digest, “Pleading”, ©=> 49; Roney v. Peyton, La.App., 159 So. 469, 470; Streat v. United Industrial Life Insurance Company, Inc., La.App., 143 So. 106; Lagay v. Chieusse, 5 Rob. 132; Spillman v. Texas & Pacific Railway Company, 17 La.App. 473, 135 So. 66; State ex rel. Brown v. United Gas Public Service Co., 197 La. 616, 2 So.2d 41; Rudd v. Land Company, Inc., 188 La. 490, 177 So. 583; South Louisiana Land Co. v. Riggs Cypress Co., Ltd., 119 La. 193, 43 So. 1003; Myers v. Dawson, 158 La. 753, 104 So. 704; Bauer v. Gilmore, La.App., 165 So. 739.
The prayer of the original petition as quoted herein clearly shows that the plaintiff prayed for service & citation of John L. & Howard E. Lewis, and H. P. Durrett, agent and adjuster, and that “after due proceedings had, your petitioner herein have and recover judgment against the *233 said defendants individually, collectively and in solido * * It is true that in the body of his petition he alleged that Lewis & Lewis is a partnership firm domiciled in the City of West Monroe, composed of John T. Lewis and Howard E. Lewis, giving their street addresses, and that the truck involved in the collision was being driven and operated by Willie Wright, “who was at the time in the employ of the said Lewis & Lewis, the owners and operators of said large eight wheel truck * * * and used in the business of said Lewis & Lewis,” and “That the said Lewis & Lewis, defendants herein, carried public liability insurance,” * * * and that “he is entitled to proceed 'herein against said liability insurer, and against the said Lewis & Lewis”, but when we read the prayer of his petition it is clear that 'he did not proceed against Lewis & Lewis but prayed only for a judgment against the individual partners, and nowhere in the prayer is the partnership of Lewis & Lewis mentioned and, therefore, the original suit cannot be considered as having brought into Court the firm of Lewis & Lewis.
Under the allegations of the amended petition and the prayer thereof, it is clear that the Lewis & Lewis named in the original petition was a separate and distinct partnership being composed of different partners entirely and engaged in a different business from the partnership of Lewis & Lewis referred to in the amended petition. Further, counsel in his brief states that there was a typographical error in the third line of the prayer as follows: “ * * * 'said absentee individual partnership of the said Lewis & Lewis, defendants herein. The error in this is in the word 'partnership’, which should have read 'partners’, and the above quoted line should have read as follows: ‘The said absentee individual partners of the said Lewis & Lewis, defendants herein.’ ”
Therefore, under the prayer of the amended petition the suit is not against Lewis & Lewis but the non-resident individual members of the partnership. With this understanding as to whether the commercial partnership of Lewis & Lewis or the individual members thereof were being sued in the original as well as the amended petition, we will proceed to take up and pass upon the various exceptions filed.
It is admitted by counsel for- plaintiff that the exception of no right and no cause of action filed on behalf of H. P. Durrett, as agent and adjuster was correctly sustained by the District Court and this ruling is, therefore, affirmed.
As to the exception to the citation filed by Richard H. Kilbourne, attorney-ad-hoc, we are of the opinion that it must be sustained for the reason that it was addressed to' Lewis & Lewis, whereas he was appointed by an order of Court to represent John G. Lewis and Pearl Lewis, individually, the non-resident members of the partnership of Lewis & Lewis.
The plea to' the jurisdiction ratione personae filed on behalf of John G. Lewis and Pearl Lewis, non-residents of the State of Louisiana, must be sustained. It is too well settled for argument that a state court does not have jurisdiction over a non-resident unless he is personally cited or the act involves a “res” over which the court has jurisdiction. Neither is true in this case. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Klotz v. Tru-Fruit Distributors, La.App., 173 So. 592; Tulane Law Review, Vol. 10, No. 4, p. 527; Latham v. Glasscock, 160 La. 1089, 108 So. 100; Andrews v. Sheehy, 125 La. 217, 50 So. 122; Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250.
Counsel further contends that John G. Lewis and Pearl Lewis waive their rights under their plea to the jurisdiction ratione personae by filing an exception of no cause or right of action, even though counsel admits that the latter exception was filed with full reservation of all their rights under the plea to the jurisdiction previously filed. This contention of counsel for plaintiff was held to have no merit by the Supreme Court in the case of Snyder v. Davison, 172 La. 274, 134 So. 89, 91:
“The rule established by the Supreme Court of the United States, and the rule in this state, and, as far as we are aware, the universal rule, is that the *234 question of jurisdiction of a court, ra-tione personae, is not presumed to be waived unless the defendant fails or neglects, in his first appearance to the suit, to except to the jurisdiction of the court. If the defendant, being sued in a court that has not jurisdiction ratione personae, excepts to the jurisdiction when he first appears in the suit, and urges the exception before making any other defense, and if the exception is overruled, he is not compelled to allow judgment to go against him by default, but may thereafter resort to any other appropriate means of defense, without reiterating his protest against the jurisdiction of the court, and without thereby creating a presumption that he has abandoned his exception to the jurisdiction of the court. When a judge has erroneously overruled an exception to his jurisdiction, there is no good reason why the exceptor should continue to remind the judge of his error at every stage of the proceedings, in order to avoid a presumption that he (the exceptor) acquiesces in the erroneous ruling.”
See also Spearman v. Stover, La.App., 170 So. 259, 263.
It is unnecessary to pass on the exception of no cause or right of action filed on behalf of John G. and Pearl Lewis.
We come now to the plea of prescription of one year filed on behalf of Globe Indemnity Company. Unless the allegations of the original petition and the prayer thereof and the testimony taken on the trial of the plea of prescription bring this case under the ruling of the Supreme Court in Lunkin v. Triangle Farms, supra, and Jackson v. American Employers Insurance Co., 202 La. 23, 11 So.2d 225, and Broussard v. Missouri Pacific Railroad Co., D.C.W.D. La.1942, 47 F.Supp. 715, then the judgment of the District Court in sustaining the plea of prescription of one year under the authority of Bowerman v. Pacific Mutual Insurance Company, 212 La. 999, 34 So.2d 53, is correct.
In the instant case, plaintiff in the original petition set forth sufficient facts to properly identify the two motor vehicles involved in the collision, and further alleged that the pulpwood truck being driven by Willie Wright was covered by public liability insurance but that he had been unable to obtain the identity and name of the insurance company carrying this liability insurance but alleged that such company was also liable, and he further alleged that the unknown liability insurance company was represented by H. P. Durrett, insurance adjuster of Monroe for Ouachita Parish, Louisiana, with offices in the Chase-Ammen Building. It is perfectly obvious that these allegations were made for the purpose of interrupting prescription if possible insofar as the unknown insurance company was concerned.
The testimony shows that Durrett was engaged in the business of an independent adjuster for insurance companies, and either on or soon after January 1, 1948, the date of the collision, he was employed to investigate and make a report “to my principal,” of the automobile collision in question. Upon being questioned as to the identity of his principal, he answered: “Globe Indemnity Company, New York.” He was also interrogated as follows:
“Q. Did the Globe Indemnity Company of New York represent to you as their agent that they carry liability insurance on the automobile or truck involved in this accident on January 1, 1948 ? A. My representation came to me from the local agents, not from New York.
“Q. Did you make an investigation of this accident referred to? A. Yes.
“Q. Whose truck or automobile or vehicle did you find out was involved in this wreck and on which the Globe Indemnity Company had insurance coverage? A. My assignment of work and the information given to me as being what we call policy information, was to the effect that it was owned by Lewis & Lewis. It was not until a long time after, in fact, more than a year after, that I knew it was individually owned.”
It is further shown that Durrett had two employees from his office contact the plain *235 tiff and also a Mr. Angelo, an attorney of Alexandria, to call on the plaintiff to discuss the accident while he was in the Veteran’s Hospital in Alexandria, and at that time Angelo obtained from the plaintiff written authority to receive reports of his treatments in the Veteran’s Hospital. The testimony further shows that Durrett made his report to some person whom he thought was an attorney but he knew that that person’s superior was an attorney. He readily recalled a conversation over the phone on December 27, 1948 with one of the attorneys for the plaintiff in which the attorney informed Durrett that he was preparing to .file the original suit against Lewis & Lewis, the owners of the truck involved in the wreck, and requested Durrett to give him the Christian names of the individual members of Lewis & Lewis who composed the firm, and he also recalled another conversation of which he testified: "I recall first your son, Harry, called and asked for that information. Then I recall that you called and asked for that same information. I sincerely told you then that I did not know their Christian names. I could only give you the name of the one man I talked to. You then went a step further and wanted me to disclose the identity of my principal and I refused.”
The testimony also shows that Durrett had no notice or actual knowledge that the suit had been filed until January 6 or 7, 1949, and he testified that his company, the Globe Indemnity Company, had knowledge through him of the filing of this suit on January 6 or 7. It is further shown that he had no authority to settle the case but was only employed as their agent to investigate the case and report to them.
Thus we see in the instant case that Globe Indemnity Company was undoubtedly notified immediately after the collision by its policy holder, for they immediately employed as their agent and representative to investigate the accident H. P. Durrett. It would also appear from the testimony of Durrett that the Globe Indemnity Company or its representatives through whom Durrett was employed, withheld the correct name of its insured from him, for Durrett testified that from what he termed policy information, which it is logical to presume was given to him by the Globe Indemnity Company or its representative, he believed.the insured to be Lewis & Lewis, and it was not until a year later that he knew that the insured was an individual who' is referred to in the testimony as Johnny Lewis. It is strange that this adjuster, who made a thorough investigation of this accident, would not have found out the name of the insured. The testimony is rather scant and he was not asked if he had interviewed Willie Wright and knew who Willie Wright worked for or if he had interviewed either of the Lewis’.
It is true that the plaintiff under Act 371 of 1940, LSA-R.S. 22:1522, could have secured from the Casualty and Surety Rating Commission the name of the insurance company if he knew the correct name of the insured. As the attorneys for the plaintiff were not employed, according to their testimony, until approximately December 27, 1948, it is doubtful that unless they could have communicated with the Casualty and Surety Rating Commission by phone they would have had sufficient time to obtain the information by mail and, furthermore, they would have been in the same position as the plaintiff if Lewis & Lewis was not the insured, which the evidence indicates. It was almost impossible for them to obtain this information under the facts in this case, as apparently the correct name of the.insured was not known to the plaintiff or his counsel, and apparently the only means of obtaining the information was through H. P. Durrett whom the plaintiff, as well as his counsel, knew represented the insurance company, and in. our opinion counsel interrupted prescription as shown' by the allegations and prayer of the original petition, citation, and service upon Durrett, the agent, employee and: representative at the time of the Globe Indemnity Company, and the evidence.
In Jackson v. American Employers Insurance Co., supra, there were three insurance companies who occupied the same office and had the same claims manager, andi the plaintiff, having been unintentionally misled by the manager of the three companies to believe that one of the particular *236 companies was the insurance carrier, accordingly sued that particular company, when as a matter of fact it had not written the applicable insurance, and after discovery of the mistake and the -filing of a second suit against the correct one of the three insurance companies, more than a year had elapsed since the accident and prescription was plead. In that case the Supreme Court said 11 So.2d at page 226:
“The manager of the claim department for the group of insurance companies, of course, could not render the Employers’ Liability Assurance Corporation, Ltd., liable on the policy issued by the American Employers’ -Insurance Company; but there is no doubt that the letter written by him in the regular course of his employment as claims manager for both companies unintentionally led the attorney to believe that his client’s claim was made upon the company that had issued the policy. The original suit, having been brought against the company that had not issued the policy, could not have resulted in a judgment either against that company or against the company that had issued the policy. But the filing of the suit gave sufficient notice to the company that had issued the policy to interrupt prescription. The causes for which the attorney for the plaintiff was misled until the period of prescription had run are attributable to the method of doing business by the claims department of both the defendant in this suit and the defendant in the original suit. There is no accusation — and no evidence or suggestion — of any wilful deception on the part of the manager of the claims department of the Employers’ 'Group. But, in the circumstances of this case, it would be unjust to hold that the filing of the original suit did not interrupt prescription.” (Emphasis added.)
In the Lunkin case, supra [208 La. 538, 23 So.2d 209], the stipulated facts are shown to be as follows:
“On March 24, 1941, while driving a tractor in sugar cane operations on what is known as Evan-Hall Plantation in Ascension Parish, Willie Lun-kin sustained certain injuries, as a result of which he died on April 2, 1941.
“Alleging that she was decedent’s dependent mother, Lena Lunkin filed a suit on 'March 30, 1942, against Evan-Hall Sugar Cooperative, Inc. (hereinafter known as Evan-Hall), and also against its insurer, to recover compensation for such death under the Louisiana Employer’s Liability law. That suit was dismissed by the district court on -September 14, 1942, after a trial of the merits that occurred on June 22, 1942, the court basing its judgment exclusively on- a finding that decedent was not employed by Evan-Hall but by another corporation known as Triangle Farms, Inc.
“On July 14, 1943, within one year after rendition of the mentioned judgment of dismissal, Lena Lunkin instituted the present suit for the recovery of the claimed compensation, making substantially the same allegations as in the first proceeding except she alleged that decedent was employed by this defendant, Triangle Farms, Inc. Additionally, in her petition, she negatived the accrual of prescription as to her claim.
* * * * *
“The evidence discloses that at McCall, Louisiana, the Evan-PIall Company owns and operates a sugar factory. Adjoining that factory is a large sugar cane farm (on which decedent was working when the accident occurred) 'known as Evan-Hall Plantation but owned and operated by Triangle Farms, Inc. Although such corporations are separate and distinct legal entities and engage in different pursuits, both are operated from the same office at McCall under the same management and, in some instances, with the same employees. The cane grown on the Evan-Hall Plantation, owned by Triangle Farms, Inc., and where decedent worked, is processed in the adjoining factory owned by *237 Evan-Hall. Fox; both companies C. S. Churchill is the general manager and Larry Montero is the bookkeeper and the person who prepares all payrolls. All employees are paid from the common office. It was on the named general manager C. S. Churchill that service of citation was made in each of the two suits brought by plaintiff.
* * * $ * *
“The circumstances of the Jackson case are essentially the same as those of the instant controversy. The error committed by this plaintiff in implead-ing the wrong defendant (Evan-Hall) in her (first suit, unquestionably, was due to the fact that decedent worked on the Evan-Hall Plantation and also to the close relationship enjoyed by the two corporations in their operations, both, as above shown, being under the same management, using a common office, and employing the same personnel in many instances. The commission of such an error is readily and easily understandable. But, notwithstanding the mistake, the service in that suit was made on C. S. Churchill, the general manager of both corporations, and by it he was notified of the instant claim and that plaintiff was asserting her claim. The judicial knowledge thus received by Churchill was chargeable not only to Evan-Hall but also- to this defendant, Triangle Farms, Inc.
* * * * * *
“Therefore, we hold that the service' of citation in the former suit on C. S. Churchill, general manager of both corporations, Was sufficient notice to this defendant of the nature of the claim of plaintiff and of her intention to assert it, and by that suit the current of prescription was interrupted; that the interruption endured throughout the pendency of that proceeding; and since this action was commenced within the one year from the date of the judgment of dismissal in the former suit, that defendant’s plea of prescription is without merit.”
The same thing can be said in this suit as was said in the Lun-kin case, that service was- made on H. P. Durrett, the employee and agent of the Globe Indemnity Company, and by it he was notified of the instant claim and that plaintiff was asserting his claim. The judicial knowledge thus received by Durrett was' chargeable to- the Globe Indemnity Company.
It appears to us that Counsel for Globe Indemnity Company argues that the Bower-man case is authority for their position that a defendant have notice or actual knowledge by actual citation and service prior to the expiration of the one year period. This is not our understanding of the holding in that case.
In the Bowerman case the Supreme Court held [212 La. 999, 34 So.2d 55]: “In the instant case, since,the prescriptive period had expired without the filing of a suit against the true insurer, and since there was no- proof that the insurer had notice or actual knowledge that plaintiff was asserting his claim by instituting suit within the prescriptive period, the plea of prescription is valid.”
The Bowerman case differs from the present'case in that the prescriptive period had expired without the filing óf a suit against the true insurer and, also, without service of citation upon any employee, agent, or representative of the true insurer or any peculiar facts or circumstances which would prove notice or actual knowledge to the true insurer that plaintiff was asserting his -claim by instituting suit within the prescriptive period. In the case at bar, while the Globe Indemnity Company was not sued in the sense that a judgment could be rendered against it, under the facts and circumstances shown in this case it had' notice and knowledge by the citation and service made upon H. P. Durrett, its agent, employee and representative that plaintiff was asserting his claim by instituting suit within the prescriptive period. Under Act 39 of 1932, LSA-R.S. 9:5801, the mere filing of the suit interrupted the period of prescription.
It is, therefore, ordered that the ruling of the District Court on the plea of pre *238 scription filed on behalf of Globe Indemnity Company be reversed, and it is now ordered that the same be overruled and the case remanded to the district court to be proceeded with according to law.
In all other respects it is ordered that the judgment of the District Court be affirmed, the costs to be divided equally between plaintiff and defendant, Globe Indemnity Co.