288 So.2d 74 (1974)
Laurie REDD, Sr., et al.
v.
Calvin PREVOST, Jr., et al.
No. 5874.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
*75 Cockfield & Gravolet, by James C. Cockfield, New Orleans, for Laurie Redd, Sr. and Larry G. Ross, plaintiffs-appellees.
Robert E. Leake, Jr., of Hammett, Leake & Hammett, New Orleans, for defendants-appellants.
Before SAMUEL, BOUTALL and FLEMING, JJ.
BOUTALL, Judge.
Plaintiffs-appellees Laurie Redd, Sr. and Larry G. Ross were passengers in an automobile being driven towards New Orleans across the Interstate 10 Twin Bridges. This automobile crashed into the rear of a truck owned by B. F. Goodrich Company and operated by its employee Walter Wilson, Jr., who abandoned the truck in the right lane of the bridge without posting any warning devices. The trial court found negligence on the part of both drivers and rendered judgment for Redd and Ross for their personal injuries against all defendants in solido. From this judgment, B. F. Goodrich Company, Walter Wilson, Jr. and The American Motorists Insurance Company (their insurer) take this appeal.
The appellants do not challenge the judgment as to liability, and only complain of the amount of the damages awarded. They contend that the trial court erred in setting the amount of damages without regard to quantum amounts rendered by the Court of Appeal in other cases, and in setting the damages at an excessive amount which constituted an abuse of discretion. We shall examine each proposition in turn.
The first issue comes about as a result of the Judge's Reasons for Judgment in denying a new trial. Appellants had requested a new trial based in part upon the contention that the awards were excessive. A number of prior appellate cases showing awards of lesser amounts had been cited to the court. The court denied the motion for a new trial on this basis stating that it was not the court's function to try and stay within a quantum guideline as set out by the Court of Appeal because each case is different; that it was the trial court's function to render a judgment based upon what it feels is a proper quantum in a particular case without regard to quantum amounts rendered by the Court of Appeal in other cases. Appellant argues to us that if quantum jurisprudence is properly considered by appellate courts in reviewing a trial court's exercise of discretion, then it *76 should be considered by the trial court in exercising that discretion. They argue that had this rule been followed by the trial court, the quantum awards in the instant case would have been lower because the jurisprudence has provided for lower quantum awards in similar cases.
We do not agree with this view. Louisiana Civil Code Article 2315 obliges a party at fault who causes damages to repair the damage incurred by the other party; while there are some damages that can be fixed with preciseness, our courts have repeatedly recognized that damages for personal injuries are not able to be fixed at a precise dollar amount. The rule in such cases is set out in Louisiana Civil Code Article 1934, paragraph 3, which we quote in part as follows:
"3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. * * *
"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
This rule permits the trial judge enough latitude in a given case to award quantum on the realistic basis of how much a claimant has been actually injured in order to fully idemnify him in a particular set of circumstances or facts. It is apparent that in each individual case, that a trial judge in assessing damages must take into consideration many variable factors relating to the injured party such that, while the precise personal injury sustained may be similar, the result of the injury may be markedly different. If we tell a trial judge that he must look to an appellate pigeonhole to award damages in a particular set of circumstances, we would be substituting a "limited discretion" rule in place of the "much discretion" rule in Article 1934(3).
We do not feel impelled to discuss the issue much further, because the basis of appellants' contention is the theory of uniformity of awards in personal injury cases, which was laid to rest some time ago by our Supreme Court. We believe the prevailing rule as to trial court and appellate functions in assessing damages has been clearly stated in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), quoting 158 So.2d 158:
"* * * When the doctrine is urged as applicable, cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration. The primary purpose of the judge or the jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case."

* * * * * *
"The primary question before the appellate court, then, is whether the judge or the jury in fixing the amount of the award has abused this great discretion vested in them by law. If for the purpose of uniformity the amount of the award is to be determined and fixed within certain limitsa maximum and a minimum based on prior adjudicated casesthe discretion vested by the Code in the judge or the jury may be destroyed or at least stringently curtailed. In view of our codal provision, the appellate *77 courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration."
In this connection, also see Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); and Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
The trial judge indicated in his reasons for judgment that he weighed the case very carefully and that he gave consideration to all of the matters called to his attention by the attorneys, and that he felt that the amounts awarded "were in line and in order considering the injury, the suffering and disability and severity of these injuries." We find no error of law in these statements of the trial judge or his approach to the issue of quantum, and so we pass to a consideration of what we consider to be the major issue, that is whether the amounts awarded were excessive and constituted an abuse of his discretion.
The trial court awarded Laurie Redd, Sr. the following:

Medical expenses $ 1,313.75
Lost wages 1,500.00
Pain, suffering, disability 22,500.00
 ___________
 Total $ 25,313.75

Appellants do not contest the award for lost wages and medical expenses, but ask for a reduction of the general damages from $22,500.00 to $10,000.00. The record discloses the following facts.
Laurie Redd was 31 years old at the time of the trial, was married and the father of six children. At the time of the accident, he had been working as a longshoreman on the river front in New Orleans. The accident occurred on the afternoon of November 3, 1969, and Redd was knocked unconscious. He was admitted to the Slidell Memorial Hospital for emergency treatment and was transferred at 2:00 A.M. the following morning to Charity Hospital in New Orleans because of his condition. At this time he was noncommunicative and was responsive only to pain. His basic and immediate treatment was for a fracture of the skull and for a neck injury. For several days he was disoriented and could not feed himself and was placed in vincke tongs (traction). He was immoblized as much as possible and was required to take codeine for the pain that he was suffering. Conservatory treatment did not succeed in correcting Redd's injuries, and on November 17, 1969, he was operated on at Charity Hospital where an anterior cervical fusion was performed during which operation traction was maintained. His neck injury was diagnosed as a subluxation of cervical vertabra C6 on vertabra C7. He continued to suffer from mental confusion and disorientation, and was required to use Demerol to ease some of his pain. A neck brace was substituted for the traction, and on November 22, 1969 he was discharged from the hospital and received clinic treatment as an outpatient until June 22, 1971.
After release from the hospital, Redd continued to have considerable pain and mental confusion. Because of economic necessity he resumed work on February 23, 1970, but it appears that on several occasions, he stopped work on medical advice because of mental confusion, and excessive fatigue and pain. He testified that he was unable to accept all of the longshoreman jobs that he could have accepted prior to the accident because of his physical condition at that time. Considering the slight build of Redd, a man five feet, eight and one half inches tall, weighing 138 pounds, it is easily perceived that the residual difficulties he experienced when considered with the type of job he had, his testimony is quite reasonable.
The medical evidence discloses that the fracture of the 7th cervical vertebra has resulted in a weak spine, and, as of February, 1972, Redd had attained maximum recovery with about 40% disability of his neck. He has limited rotation and his lateral *78 tilt is about 50% normal, although it is bilaterally equal. Redd will have difficulty and pain in doing his normal work, which involves heavy manual labor, rotation of his neck and prolonged extension of the neck. The testimony of the doctors, further indicates that Redd has suffered a great deal of confusion and memory loss, and that there was a necessity for a great deal of relearning. Additionally, Redd has suffered from problems with his shoulder, and it is suggested that some of his shoulder complaints may be the result of a possible rotator cuff tear that has healed with some residual.
The overall condition of this man is such that he has quite obviously suffered severe and painful injuries, and as a result has suffered with residual disabilities and will continue to suffer some residual disabilities. Because of his family status and the conditions of his work, it is equally obvious that he will continue to suffer from these injuries in the future, although to a lesser extent than during the initial period after his release from the hospital.
Appellants have referred us to three prior cases for guidance, which demonstrate awards ranging from $10,000.00 to $15,000.00. As opposed to this, appellee has referred us to seven prior cases ranging in awards from $20,000.00 to $60,000.00. As noted above, the trial judge awarded the sum of $22,500.00. Considering the cases to which we have been referred, and in considering the facts in this case, we cannot say that the trial judge has awarded an excessive amount of damages nor that he has abused his discretion. Accordingly, we affirm his award for Redd.
We now consider the award to Larry G. Ross. The trial court awarded Ross the following amounts:

Medical expenses $2,218.75
Lost wages 5,000.00
Pain, suffering, disability 50,000.00
 __________
 Total $57,218.75

In this award, appellants do not contest the medical expenses, but contend that the lost wages award should be reduced from $5,000.00 to $2,200.00, and that the general damage award should be reduced from $50,000.00 to $15,000.00.
At the time of the accident, Larry Ross was 22 years old, married, and the father of two children. He was gainfully employed by an auto muffler repair shop in New Orleans, and his chief job was to replace defective automobile mufflers. Ross was admitted to Charity Hospital on the afternoon of the accident and was immediately operated on to repair his facial lacerations and the damage to his right eye. He was discharged from the hospital on November 17, 1969, but was readmitted on May 20, 1970 for corrective surgery to his right eyelid. He was discharged on June 5, 1970 but came back to the hospital on August 22, 1970 for more corrective eye surgery. He was discharged on August 26, 1970. He re-entered the hospital on May 28, 1971 to undergo surgery for his facial scars and was discharged on June 3, 1971. The record shows that he had clinic treatment as an out-patient for the period from November 19, 1969 through October 30, 1970.
Ross's wage record reveals that for the period prior to the accident, i. e., from the week of January 2, 1969 through November 6, 1969, he averaged $118.92 per week in wages. After the accident, for the period November 12, 1970 through December 31, 1970, he earned $99.17 per week, and $116.00 per week for the period January 7, 1971 through October 28, 1971. Ross did not return to work for approximately one year following the accident. The trial judge granted $5,000.00 to Ross for lost wages, the award apparently being based on wages earned for the period January 2, 1969 through November 6, 1969, and January 7, 1971 through October 28, 1971. Appellant argues to us that his award should be reduced to $2,200.00 because it is evident from the record that Ross could have returned to full time work in January, 1970. Hence Ross should be *79 reimbursed only for the period he underwent surgical procedures for his injuries, i. e., a period of about four months. We do not agree that the record discloses that Ross could have returned to full time work in January, 1970. On the contrary, the record reveals that after the accident Ross had only finger-counting vision in his right eye and was forced to re-enter Charity Hospital in May and August, 1970 for corrective eye surgery. During the period November, 1969 through October, 1970, Ross was an out-patient at the hospital clinic. We cannot say that a man under these circumstances could have been expected to return to his normal work routine. We do not find the trial judge's award for lost wages in the amount of $5,000.00 to be excessive or arbitrary, and we affirm the trial court's findings in this respect.
We come now to the question of whether the trial court's award of $50,000.00 for general damages was excessive. The medical evidence is clear that Ross suffered a 99% loss of the visual function in his right eye, and his sight is limited to perception of hand and finger movements. As a result of the accident, a heavy scar extends completely across the clear window or cornea of the right eye, and the prognosis for recovery of vision in the eye by means of a corneal transplant is extremely guarded. To put it simply, in the accident the right eye was cut open and even with estimated heavy hospital and surgical expenses, the chances of regaining any usable vision in the right eye are remote. The right eye turns outward and the right eyelid droops in an unsightly way. Further surgery would be required to correct this condition; the eye is unable to contain the flow of tears and, again, surgical correction is called for. In addition to the eye damage, Ross suffered facial lacerations and scars in the area of the right eye, over the bridge of the nose and on the forehead over the left eye. This is a permanent condition.
Appellants have referred us to a number of cases involving loss of an eye or severe damage to eyesight. In each case the award is less than the present award, but the cases do demonstrate a marked increase in award in the latest cases. In Schnell v. Travelers Insurance Co., 264 So.2d 346 (La.App. Fourth Circuit, 1972) an eleven year old girl was awarded $42,500.00 for the loss of an eye. In Walker v. Champion, 274 So.2d 840 (La. App. Third Circuit, 1973) a minor child was awarded $35,000.00 for the loss of sight in one eye. Minor facial disfigurement was involved in the Walker case. Finally, we are referred to the most recent decision of the Supreme Court in Walker v. Champion, La., 288 So.2d 44, dated December 6, 1973, wherein an unskilled agricultural worker was awarded $100,000.00 for loss of an eye, reversing a reduction by the court of appeal, 274 So.2d 840 (La. App. 3rd Cir. 1973).
However, as we said in Reeder v. Allstate Insurance Company, 235 So.2d 111, 113 (La.App. 4th Cir. 1970):
"The size of an award, per se, does not require reduction nor does its relationship to awards in cases of a roughly similar nature. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), makes it plain that each award must stand on the facts of each case, that is, upon a legally feasible relationship between the award and the evidence which supports it. The abuse of this relationship, not the abuse of prior cases, constitutes legal excess."
When we take all factors into consideration such as: loss of vision in one eye, facial and eye disfigurement coupled with poor cosmetic effect, probability of future severe medical expense, increased danger on the job because of blindness on one side, the effect on future employment because of this disability, the precarious position of a young married breadwinner with two childrenwe cannot find that the trial judge has awarded excessive compensation *80 to the injured party and that he has abused his discretion.
The judgment appealed from is affirmed in all respects and the appellants are to bear all costs of the appeal.
Affirmed.