ELLIS, Judge:
This suit was filed by W. E. Dickinson and Lorene M. Dickinson against Maryland Casualty Company, for damages arising out of an accident between an automobile driven by Mrs. Dickinson and an automobile driven by Jerome R. Ducote, in which Mrs. Dickinson suffered physical injuries.
Mr. Ducote, a resident of Texas, was insured by Maryland American General Insurance Company, a member of the American General Companies, which is a Texas corporation, not doing business in Louisiana. Maryland Casualty Company is another member of the American General Companies, which does business in Louisiana, and which maintains an office in Baton Rouge.
The accident happened on July 29, 1975. At the scene, Mr. Ducote gave Mrs. Dickinson a slip of paper on which he had written his name and address and the name of his insurer. On July 31, 1975, Grover H. Stephens, claims manager of the Baton Rouge office, wrote to Mr. Dickinson relative to the accident. The letterhead used had “Maryland Casualty Company” in large type across the top of the page, and immediately beneath, in small type, a list of the American General Companies. All other correspondence between Mr. Stephens and the plaintiffs, or their attorney, was on stationery headed “The Maryland” in large type, with no other corporate designation. Across the bottom of the page in small type there is “Maryland Casualty Company, Baltimore — Member of the American General Group.” All letters on this letterhead, except the first, were written after suit was filed on February 27, 1976.
A settlement for the property damages suffered by plaintiffs was reached, and, on August 5, 1975, a draft was issued for $175.17 to Mr. Dickinson. The drawer of the draft was identified by the words “The Maryland” in large type, followed by “Maryland Casualty Companies, Baltimore, members of the American General Group” in small type.
On February 27, 1976, this suit was filed against Maryland Casualty Company. Set *181 tlement negotiations continued for some time thereafter with Mr. Stephens, who at no time advised plaintiffs or their attorney that they had sued the wrong company. The matter was finally turned over to its attorney by the defendant, and an answer in the form of a general denial was filed by Maryland Casualty Company on June 7, 1976.
On August 19, 1976, Maryland Casualty Company moved for summary judgment in its favor, based on the fact that it did not insure Jerome R. Ducote. It was at this time that plaintiffs discovered for the first time that they had not sued the insurer of Mr. Ducote. Also at that time Mrs. Dickinson remembered the slip of paper given her by Mr. Ducote, and gave it to her attorney. On September 17, 1976, plaintiffs filed a supplemental petition, making Maryland American General Insurance Company a defendant, and alleging that Mr. Stephens had led them to believe that Maryland Casualty was Mr. Ducote’s insurer.
Thereafter, Maryland American filed a peremptory exception of prescription, which was overruled. Maryland Casualty’s motion for summary judgment was denied. Maryland American then filed an answer which put at issue, inter alia, the question of prescription, and the matter was tried by a jury.
At the trial, the defendants stipulated the fault of Mr. Ducote in causing the accident, so that the only questions before the jury were the liability of Maryland American, and quantum. The jury found that the action against Maryland American was prescribed by the liberative prescription of one year, and rendered a general verdict for the defendant. Judgment dismissing plaintiffs’ suit was signed, and plaintiffs have appealed.
The action for an offense prescribes in one year. Article 3536, Civil Code. This prescription may be interrupted as to a debtor by citation to appear before a court of justice; if the debtor acknowledges the right of the creditor; and by citation on a debtor in solido. Articles 3518, 3520, 3552, Civil Code. None of these factors are present in this case.
However, a major exception to the foregoing principles was made in Jackson v. American Employers’ Ins. Co., 202 La. 23, 11 So.2d 225 (1942), which established the following rule:
“Where three insurance companies were doing business as a group under the title “The Employers’ Group of Boston, Mass.”, letterheads of which bore the names of all three companies, having the same office for their claim department, the same telephone, same manager and same employees in that department, the filing of suit against one of the companies under mistaken belief it was insurer under policy covering automobile causing injury, after plaintiff’s attorney had been led to believe by letter from manager of claim department that the company sued was the company which had issued the policy, was sufficient to interrupt the one-year period of prescription against the company which had issued the policy. Act No. 39 of 1932.”
In the later case of Martin v. Mud Supply Company, 239 La. 616, 119 So.2d 484 (1959), the Supreme Court said:
“Our research has not revealed any jurisprudence which holds that knowledge alone of the filing of a suit against a closely associated person or company constitutes an interruption of prescription as to one not cited within a prescriptive period.
‘Citation to a defendant, which is the judicial notice to him to appear and answer the demand that is being made against him, is the only form of notice which will interrupt prescription. Civil Code, Art. 3518. Actual notice will not suffice. Agnelly v. Goodheit, 6 La.App. 121.” Achord v. Holmes, La.App., 34 So.2d 807, 808.
‘One of the well known rules relative to prescription is, that it becomes interrupted, when the party in favor of whom the time necessary to acquire it is running, has been cited to appear before a court of justice, on account of *182 the right or claim to which the prescription would apply. This is called a ‘legal interruption,’ and it matters not whether the suit has been brought before a court of competent jurisdiction, or not. Civil Code, arts. 3482, 3484, and 3516. It is, therefore, necessary that the party should be cited; and it cannot be controverted, that any other means of knowledge of the proceedings instituted against him, brought home to the party against whom the prescription is sought to be legally interrupted, would not be sufficient to operate as a legal interruption in the true sense of the law. * * * ’ Hill v. Barlow, 6 Rob. 142.”
This holding would seem to be contrary to that of the Jackson case, supra. However, in the Martin case, the court distinguished the Jackson case, and stated that the syllabus above quoted correctly sets forth the rule of the case. The facts of the Jackson case are indistinguishable from those of the instant case, even to the point that the plaintiff’s attorney was misled as to the name of the insurer by the letterhead of the claims adjuster.
We therefore hold that, under the rule of the Jackson case, prescription was interrupted as to Maryland American General Insurance Company by the filing of suit against Maryland Casualty Company, and service of citation upon that legal entity. The suit was therefore timely as to Maryland American, and the jury was legally in error in finding otherwise.
Mrs. Dickinson was injured on July 29, 1975, and saw Dr. F. C. McMains, an orthopedic surgeon, on August 5, 1975. After the accident, Mrs. Dickinson suffered dizziness and neck pains, but by the time she saw Dr. McMains, her primary complaint was of pain in the lumbar spine. X rays showed a compression fracture of the second lumbar vertebra. Dr. McMains prescribed a dorsal lumbar support.
Mrs. Dickinson continued to wear the support, and to see Dr. McMains, until October 26, 1976. During most of this period, her complaint was of pain in her low back radiating into the leg. Her activities were restricted to the extent that she could not ride in a car for any distance, and was unable to carry out such routine chores as mopping and sweeping.
Dr. McMains diagnosed her injuries as a fracture of the second lumbar vertebra and aggravation of degenerative disc disease at the lumbosacral joint. He referred Mrs. Dickinson to Dr. James A. Poche, a neurosurgeon.
Dr. Poche tried conservative treatment for a while, then hospitalized Mrs. Dickinson for a myelogram, which was within normal limits. When plaintiff failed to improve further, he performed a lumbar lami-nectomy, in April, 1977, removing the disc at the lumbosacral joint.
Mrs. Dickinson’s condition did not improve after the operation, and, as of June 8, 1977, Dr. Poche considered her prognosis guarded. At the time of the trial, in January, 1978, Mrs. Dickinson’s condition had not improved. Her husband had died after the accident, and she testified that she needed to go to work, but was unable to do so because of the condition of her back. Prior to her marriage to Mr. Dickinson in 1971, plaintiff had been employed as a dental assistant, but had stopped working when she married. We are not enlightened as to Mrs. Dickinson’s age, although the record does reveal her to have been the grandmother of a five year old child at the time of the accident.
Considering the foregoing we are of the opinion that $50,000.00 should fairly compensate plaintiff for her pain and suffering and disability. Special damages totalling $3640.15 were proven.
The judgment appealed from is reversed, and there will be judgment herein in favor of plaintiff, Mrs. Lorene Dickinson, and against defendant Maryland American General Insurance Company for $53,640.15, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
REVERSED AND RENDERED.