406 So.2d 691 (1981)
Jessie D. RAMPHREY and Adelaide Ramphrey, Plaintiffs-Appellants,
v.
HIGHLANDS INSURANCE COMPANY, Defendant-Appellee.
No. 14694.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1981.
*692 Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for plaintiffs-appellants.
Davenport, Files, Kelly & Marsh by William G. Kelly, Jr., Monroe, for defendant-appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
HALL, Judge.
The sole issue on appeal in this case is quantum. Plaintiffs-appellants argue that the $31,000 general damage award made by the trial court is inadequate and should be increased to $50,000. Defendant-appellee, who answered the appeal, argues that the award is excessive and should be reduced to $20,000. The parties agree that the $3,640.15 award for special damages was an inadvertent error and should be increased to $8,421.13. We amend the judgment to correct this error and otherwise affirm.
Mrs. Ramphrey was injured on August 12, 1979 when the pickup truck in which she was a passenger was struck from the rear by another vehicle. She was taken to the hospital emergency room where a doctor diagnosed her injuries as an anterior subluxation (partial dislocation) of the fourth cervical vertebra upon the fifth, with a possible fracture of the fourth cervical vertebra. Her neck was immobilized and she was transferred to another hospital for neurological evaluation. The neurosurgeon concurred in the original diagnosis and advised fusion surgery. The alternative to surgery was conservative treatment with traction, casts, and braces. Mrs. Ramphrey refused to undergo surgery at first because of her anxiety concerning the possibility of damage to her spinal cord. Tongs were attached to her skull so that traction could be applied; Mrs. Ramphrey was completely immobilized for several days. She later consented to the surgery which was performed on August 21.
A sliver of bone from her hip was used to fuse the fourth and fifth cervical vertebrae. Alignment was good and she was allowed to go home nine days later, wearing a heavy plastic collar. About three months later a soft collar was substituted. During her convalescent period, Mrs. Ramphrey returned to the neurosurgeon on five occasions, reporting no pain. On February 19, 1980, six months after the accident, she was discharged as fully recovered to return to full activity without restriction, with no symptoms or complaints.
While finding that the testimony of Mrs. Ramphrey, her husband and daughter as to her fear, pain, and suffering was exaggerated and inconsistent with her reports to the doctor, the trial court recognized the severity of her injuries. The trial court in written reasons for judgment stated:
"On the other hand, the rather sterile, somewhat reserved and academic description of the cold and impersonal medical facts does not tell the whole story. Notwithstanding *693 Mrs. Ramphrey's obvious `over-reaction' in many respects and her apparent tendency to exaggerate in retrospect, it is manifest that she suffered from natural terror (as well as severe pain) when told she had a broken neck, when she realized that she could easily become paralyzed, when having to decide between the risk of surgery and the lengthy disability and discomfort of non-surgical treatment, and in enduring the treatment and recovery. Fear, anxiety and pain are in and of themselves largely subjective in degree. Moreover, although medically sound, she has had her throat entered, a piece of bone removed from her hip and part of her upper spine immobilized. She is therefore less than 100% of what she was before the accident, injury and treatment.
"At least three or four weeks of extreme anguish, pain, discomfort and uncertainty clearly followed the accident. While that may seem a short time in retrospect, it must be an eternity to one lying virtually immobile for over two weeks without the sophisticated knowledge of the medical profession and suffering the mental and physical anguish of such circumstances. In addition, she was sharply restricted by her collar and her healing hip for some two months and only gradually released from these impairments over the next two or three months."
The only witnesses who testified at trial were Mr. Ramphrey and the plaintiffs' daughter. Mrs. Ramphrey had become disabled by a serious illness unrelated to the accident and was unable to testify at trial. Her testimony, as well as that of the medical witnesses, appears in the form of depositions filed into the record. Plaintiffs-appellants argue that since the trial judge did not have the opportunity to view three main witnesses while they were testifying, the "manifest error" rule does not apply and the standard of review by the appellate court is broader than in the usual case. Plaintiffs cite Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979), in which it was noted that the manifest error rule was not applicable to findings of fact made from a review of the transcript by a trial judge who had succeeded the judge who tried the case.
Plaintiffs' argument is misplaced. The "manifest error" or "clearly wrong" rule applies to review of the trial court's findings of fact. In this case the trial court's findings of fact as articulated in its written reasons for judgment are accurate and correct; plaintiffs do not seriously attack those findings as being manifestly erroneous. Plaintiffs' complaint is directed more toward the amount of the award given the facts as established by the evidence and found by the trial court.
In reviewing the amount of an award of damages, the appellate court's function is to determine whether the much discretion given to the trial court by LSA-C.C. Art. 1934(3) has been abused, not whether the amount of the award is manifestly erroneous or clearly wrong. In other words, based on the facts as found by the trial court, and determined by the appellate court not to be manifestly erroneous, is the award so high or so low as to be an abuse of the trial court's discretion? That the testimony of some or most of the witnesses was taken by deposition does not take away from the much discretion accorded to the trial court in fixing the amount of damages. The standard of appellate review enunciated in Reck v. Stevens, 373 So.2d 498 (La. 1979), and other recent Supreme Court cases remains the same.
In support of their argument that the award is so inadequate as to constitute an abuse of discretion, the plaintiffs rely on the awards made in Rue v. State, Dept. of Highways, 376 So.2d 525 (La.App.3d Cir. 1979) ($60,000) and Dickinson v. Maryland Casualty Company, 364 So.2d 179 (La.App. 1st Cir. 1978), writ denied 366 So.2d 561 (La.1979) ($50,000), involving somewhat similar injuries. In support of its argument that the award is excessive, defendant relies on Francis v. Government Employees Insurance Company, 376 So.2d 609 (La.App. 4th Cir. 1979), writ denied 378 So.2d 1391 (La.1980) ($15,000); Bondi v. Government Employees Insurance Company, 349 So.2d 1327 (La.App. 1st Cir. 1977), writ denied 350 So.2d 1215 (La. 1977) ($40,000); Hebert v. *694 Perkins, 260 So.2d 15 (La.App. 4th Cir. 1972) ($15,000); Redd v. Prevost, 288 So.2d 74 (La.App. 4th Cir. 1974) ($22,500); Farace v. Government Employees Insurance Company, 328 So.2d 400 (La.App.3d Cir. 1976) ($40,000); and Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir. 1977) writs denied 351 So.2d 161 and 162 (La.1977) ($40,000), involving somewhat similar or greater injuries.
Looking to the individual circumstances of the present case, we do not find the award of $31,000 for the particular injury and its effect on this plaintiff to be either inadequate or excessive, nor do we find a clear abuse of discretion. The cases cited by each side are of little aid in making this determination because they do not involve facts and circumstances closely similar to the present case, because they do not represent the mass of past awards for similar injuries, and also because the award in the present case is not greatly disproportionate to the awards in those cases. See Reck v. Stevens, supra.
The judgment of the district court is amended to increase the award for special damages from $3,640.15 to $8,421.13 and, as amended, is affirmed. Costs of appeal are assessed equally to the appellants and the appellee.
Amended and, as amended, affirmed.