This case was once before submitted to this court and was disposed of on a special defense pleaded by the defendant liability insurance carrier and based on the fact that the written notice of the occurrence of the accident which gave rise to the plaintiffs' cause of action had not been given as soon as practicable after the accident, as require under the terms of the policy sued on. See La. App., 23 So.2d 765. The Supreme Court thereafter reviewed the decision *Page 53 
of this court on a writ of certiorari, reversed the holding on the special defense and remanded the case to the district court for trial on the merits. See 211 La. 19, 29 So.2d 177. The case had actually been tried on the merits at the original hearing in the district court and all that remained to be done by that court was to decide the question of negligence, vel non, of the driver of the insured automobile in having run over and killed a child. The trial judge resolved that issue in favor of the plaintiffs, parents of the child, and awarded judgment in favor of each in the sum of $3500. The present appeal is from that judgment.
The case, as will be recalled from the former opinions, is a very unfortunate in which a child sixteen months old was killed by an automobile driven by its uncle, Carl E. Toler, when he was backing out of the garage in a private yard. Mr. Toler occupied a room in the same house in which the child's parents lived. In fact it was his own house and they all lived together under some arrangement which apparently was mutually satisfactory to them all in so far as any charges, for rent and for board and lodging were concerned. This living arrangement between them formed the basis of another special defense which had been urged by the defendant under the policy which it had issued.
[1] When the case was first before him, the trial judge, in his written opinion, stated that under the facts adduced, the principle under which the defendant sought to be released on the ground that the uncle and the parents were members of the same household and which provided one of the exceptions in the policy, could not be applied. That point is not urged before us now and even if it were we would be inclined to agree with the trial judge that their mere living together under the circumstances shown, did not make the parties members of the same household under which defendant could be relieved of liability under the exception as claimed by it.
[2] The trial judge has written a very thorough and comprehensive analysis of the testimony regarding Mr. Toler's negligence and, necessarily, manifest error would have to appear in his finding of facts in order for this court to reverse the judgment rendered by him.
There are some features of the case which are similar of some of those that appeared in the case of Comer v. Travelers Ins. Co., 27 So.2d 438, recently decided by this court and in which, we understand, the Supreme Court has granted writs of review.
[3] Both cases involve the running over of a child of about the same age, by an uncle who lived in the same household with the child's parents. Without going into any detailed analysis of all the facts in each, we find this important and controlling difference between them: In the Comer case there was no proof that children were accustomed to playing in the vicinity of the driveway over which the car was being backed, whereas in this case Mr. Toler himself admits that they did and that he was aware of it. For that reason therefore he was called upon to take greater precautions than Rev. Van Dyke, the driver of the car in the Comer case was called on to take and yet the reverse of things is what happened. In the Comer case the driver seemed to have been extra precautious in looking to see if the child was following him or had come down from the porch where he had left it with his daughter but in this case Mr. Toler merely looked in his rear vision mirror, which we do not think helped him any in seeing the child immediately back of the car and he also looked to his right which neither would have given him a clear sight of what was in the back of him, especially to the left of his car where the child appeared. On that ground therefore we hold that his negligence appears whereas we could not find any negligence on the part of the driver in the other case.
Another important difference between the two cases lies in the fact that in the Comer case the uncle last saw the child when it was in the custody of an adult person and as was held, he had a right to assume it would be taken care of. In this case Mr. Toler, the uncle, was the last person who was with the child when it was in a place of safety on the back porch of the home. Notwithstanding that, he left *Page 54 
it there alone, with the screen door unlatched. Knowing, as he admits that children played around the driveway, he should have exercised more care than he did in leaving the child unattended or at least in notifying its mother or some adult person of it being there alone.
There is considerable testimony in the record concerning a pile of lumber not far from the driveway, the idea as we see it, being to show that the child might have appeared suddenly from behind it without having been seen by Mr. Toler. We do not attach much importance to this because if children were accustomed to playing around the driveway and also around that pile of lumber as is testified to, that should have made Mr. Toler the more apprehensive about their safety and more careful in backing out his car from the garage.
We cannot attach any blame to the child's parents in this case. The mother had left not long before the accident to go to one of the neighbors to bring her some pudding for her children. When she left, the child was on the back porch and so was her uncle. Mr. Toler, in a way, denies that he was on the porch and intimates that the mother may have been there when he left and that the child at that moment was seated in a high chair at the table. Mrs. Jackson's testimony is supported however by that of Mrs. Noel Sampson, the neighbor whom she was visiting and also by that of a young boy named Robert Sibley. Mrs. Sampson testified that when she heard the motor of the car starting, Mrs. Jackson was in her kitchen with her, and young Sibley says that when the child was struck he saw Mrs. Jackson rushing from Mrs. Sampson's house. The father of the child was busy at the time attending to a small garden in the back yard and he therefore cannot be charged with any negligence in having failed in his attention to the child.
[4, 5] In the Comer case there was cited a provision of law from Blashfield to the effect that if a driver has reason to anticipate that a child might be near, it is his duty to see that his way is clear before putting the vehicle into motion. The driver was relieved of negligence in that case under a further provision of the same section to the effect that if he had no reason to anticipate the presence of the child near the car, negligence could not be predicated on the mere fact that he started his machine. We believe that in this case, since Mr. Toler admits that he knew children played around the driveway and also the wood pile near the driveway, he had reason to anticipate their presence and therefore he had the duty to see that the drive-way was clear before he put his car in motion.
Much is said in the case about the father having rushed over and observed that the child had been hit when the car was first stopped at his cry of alarm to Mr. Toler and that it was only when Mr. Toler again put the car in motion, after having stopped, that the wheel rolled over the child and killed it. The argument is made that even though Mr. Toler may not have been negligent at first in backing the car and merely knocking the child down, that he was grossly negligent in putting his car again in motion after having been warned of the danger and then running over the child. There is some conflict on the testimony on this point and we do not have to resort to it in order to hold Mr. Toler guilty of negligence, as we are of the opinion as already indicated, that he failed in his duty in takin proper precautions before putting the car in motion the first time. Under the facts found in the record, liability was properly imposed by the trial judge against the defendant and the judgment has to be affirmed.
[6] The question of quantum is discussed at some length in brief of counsel for plaintiffs who urge that the amount of the award to each parent should be increased. There was no appeal taken by them however, nor did they answer the appeal taken by the defendant. The question of quantum is therefore foreclosed and the award made will have to stand.
For the reasons stated the judgment appealed from is affirmed at the cost of the defendant, appellant herein. *Page 55