[Civ. No. 13599.  First Dist., Div. Two.  Dec. 3, 1948.]

ARCHIE L. PALMER et al., Appellants, v. HARRY K. WOLFF et al., Respondents.

Milton Marks, Morris Lowenthal and Charles Becker for Appellants.

John J. O'Toole, City Attorney, and Jack G. McBride, Deputy City Attorney, for Respondents.

NOURSE, P. J.—Plaintiffs, Palmer and Cane, appeal from a judgment denying their petition for a writ of mandate to restore them to their civil service positions with the city of San Francisco. Petitioners had been employees of the Market Street Railway Company and were duly blanketed into the civil service of the city under section 125 of the charter when the city acquired the railway on September 29, 1944. Both were replaced after having reached the age of 70, the age of compulsory retirement under section 165(b) of the charter—Palmer on June 19, 1946, by a certified qualified civil service employee, Cane on May 6, 1946, by a certified qualified limited tenure employee. They contend that their replacement was illegal because by emergency proclamation of August 21, 1944, the Mayor of San Francisco had directed that with respect to "Market Street" employees, like appellants, the charter limitation as to age be waived for the duration of the war, which proclamation was terminated by proclamation of October 8, 1946, after discharge and the filing of the petition.

The respondents, the members of the civil service commission, take the position that the above waiver of the age limitation was restricted by paragraph 4 of the Emergency Proclamation of August 21, 1944, reading in part: "That the Civil Service Commission make every effort to obtain qualified employees by regular or by limited tenure examinations to take the place of all persons certified to said Public Utilities Commission . . . who suffer under disqualification of age . . . ." and that when such qualified employees were found those over 70 had to be discharged.

Appellants contend that paragraph 4 of the proclamation applies only to persons who were disqualified by age at the time of their entrance, not to persons who, like appellants, became disqualified by age later during the emergency, although it is also argued that the proclamation of August 21, 1944, waives the age limit as to both groups equally. Why that equality should not apply to paragraph 4 is not made clear, and we can find no reason or logic for a distinction since the compulsory retirement provisions of the charter are

made to apply to all civil service employees without regard to age at the time they entered the service.

But the controlling issue is this: Bearing in mind that the writ will issue "to compel the performance of an act which the law specially enjoins," or "to compel the admission of a party to . . . a right or office to which he is entitled," Code of Civil Procedure, section 1085, the following dates are to be noted: The mayor's proclamation waiving age requirements was dated August 21, 1944. Petitioners reached the age of 70 years May 6, 1946, and June 19, 1946, respectively. Petition herein was filed September 11, 1946. The mayor's proclamation was revoked October 8, 1946. Trial of this action was held March 3, 1947, and judgment was entered May 15 following. Thus it appears that at the time of the trial and judgment both petitioners had long passed the age of compulsory retirement and neither was entitled to a "right or office" which could be restored to them by a writ of mandate. Since the code section provides that the writ of mandate "may be issued" to compel the performance of an official duty the corollary naturally follows that it may not issue to compel the performance of an act which the law specially proscribes.

This conclusion follows from these conceded facts—appellants were blanketed into the city civil service by section 125 of the San Francisco Charter (Stats. 1931, p. 3049). Section 165(b) of the charter provides that "retirement shall be compulsory at the age of seventy years." The mayor's proclamation of August 21, 1944, declared "that the Charter limitations as to the age of said employees be and the same are hereby waived for the duration of the present war." This declaration was rescinded and the "emergency" was terminated by proclamation of October 8, 1946.

Hence, assuming for argument alone, that the compulsory retirement provisions of section 165 of the charter were suspended by the mayor's proclamation, rather than the age requirements for entrance into the civil service only, it is obvious that when appellants' application for a writ of mandate was presented to the trial court there was no existing "right" which appellants could assert, and no "duty" which respondents could be required to perform. The application for the writ was therefore properly denied upon the accepted rule that mandamus will not issue to enforce mere abstract rights. This rule is discussed at length in 16 California Juris-

prudence, pages 776 et seq. Later cases are collected in *Clementine* v. *Board of Civ. Ser. Commrs.*, 47 Cal.App.2d 112, 114 [117 P.2d 369].

The further question suggests itself though not argued in the briefs of either party. That is the right of petitioners to payment of salary during the period from their removal to the date of the mayor's final proclamation. Though petitioners pray for a writ of mandate directing payment of salary from the date of their removal to the date upon which they shall be restored, there are no allegations in the petition which would support the prayer. Thus there is no allegation of prior demand nor of an excuse for failure to file one, which would justify a mandate for that purpose. Such an allegation is a prerequisite to the statement of a cause of action in mandate. (16 Cal.Jur. p. 771.)

The reasonableness of the rule as applied here is plain. The municipality was made a party defendant and if petitioners had filed a proper demand it is conceivable that the city might have elected to pay the salary claimed to have accrued prior to the mayor's proclamation in order to avoid the litigation.

Insofar as the prayer of the petition may be treated as a prayer for a money judgment as distinguished from the demand for a writ of mandate the complaint does not contain any allegation which would support such a judgment, and hence the issue was not before the trial court. The reviewing court is concerned only with error claimed to have occurred in the inferior court. When some issue is hidden in the pleadings, but not tendered for hearing and decision, it will not support a reversal on the ground that the trial court committed error.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.