FLEMING v. TRAVELERS INSURANCE COMPANY, et al.

In Banc. April 11, 1949.

(39 So. (2d) 885)

Ebb J. Ford, Jr. and Van Antwerp & Rector, for appellant.

Wallace, Greaves & Wallace, for appellees.

**Alexander, J.**

Appellant brought suit and obtained judgment on April 24, 1942, against B. B. Stewart in the sum of $9,000 for personal injuries suffered in an automobile collision. Thereafter, she filed her bill against appellees for discovery of an automobile liability policy alleged to have been issued covering Stewart. The bill also prayed for decree against the appellees for the balance due upon the judgment, after allowing a credit thereon in the sum of $1,346.56 collected under such judgment. The policy in question was discovered and introduced, and disclosed the following pertinent facts: It was captioned: "Uniform Standard Automobile Policy—Combination Form". It was issued in the name "The Travelers Indemnity

Company and the Travelers Fire Insurance Company, Hartford, Connecticut.'' Liability thereunder for personal injuries was made referable especially to the former insurer. The policy provided ''It is agreed that such insurance as is afforded by the policy for bodily injury, liability and property damage liability also applies: to the named insured . . . with respect to the operation of any other private passenger automobile by any such insured . . . provided . . . (b) such use is with the permission of any person having the right to grant such permission; and (c) the automobile is not (1) owned in full or in part by or registered in the name of the named insured or any member of the named insured's household . . . .''

The injury was caused while Stewart was driving an automobile which belonged to his wife, but which was not the automobile described in the policy. The defenses relied upon, were (1) the automobile involved in the collision was owned by a member of the insured's household; (2) there was no notice to the insurer as required by the policy; and (3) the bar of a statute of limitations provided in the policy of two years and one day. The appeal is from a decree dismissing appellant's bill as amended.

There is no question that the policy imposed responsibility upon the insurer to pay any judgment procured against the insured within the provisions of the policy. The matter of notice lies at the threshold of our inquiry. The policy provides: ''Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company of any or its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the name and address of the injured and any available witnesses.'' The accident happened on January 26, 1941. On February 8th thereafter, the attorneys for Stewart gave notice by way of an extended report of the facts and circumstances of

the accident, furnishing all available details thereof. The notice was addressed to Fred M. Burton & Company, Galveston, Texas, which was the company which delivered the policies to the insured on behalf of the appellees and collected the premiums thereon. The said agent denied liability. We do not enlarge upon other circumstances and testimony involving the sufficiency of this notice other than to mention that the record shows that the appellee was aware of the suit at law brought against the insured and took no part in its defense. We find that the condition of the policy with respect to notice was fully met.

A controlling consideration is to be found in answer to an inquiry whether the car involved in the accident was then owned by a member of the insured's household. The record shows without direct dispute that Stewart had been estranged and separated from his wife since 1936. Stewart had purchased, and then owned, the home in which his wife was living in New Orleans, but they were not living together as man and wife for some time before and after the date on which appellant suffered her injury. Stewart had not spent a single night at home for over five or six years, although he visited the home on the rare occasion of holidays, at which times the wife would leave the room in order to avoid him. A divorce was procured by her in March 1944. The estrangement appears, without room for dissent, to have been caused by the infatuation of the insured with another woman with whom he had been living and representing as his wife for some time prior thereto. This woman was a passenger in the car at the time of the wreck. She and Stewart had two children. These facts were known to his wife. Stewart furnished some support to his wife, and maintained a residence in New Orleans. At the time of the accident, he gave as his address an apartment in the City of Mobile, at which he and the other woman resided. In the meantime, the telephone number of the house in New Orleans was retained in the directory under

the name of Stewart. The testimony developed other facts completing the background of this estrangement, whose bold outlines alone we deem it necessary to delineate.

We now examine whether, under the provisions of the policy, the wife was at the time of the accident a member of the insured's household within the purpose and purview of the policy.

At the outset, we must discard popular definitions of the term whose liberal generalities are rarely subjected to technical scrutiny. Nor are those cases controlling which apply a definition which recognizes a mere formal status as sufficient to protect an exemptionist. In seeking to expand the meaning to include many diverse situations, the courts, have, without perfect consistency, solved their dilemmas by such test as the fact or obligation of continual support, housing under a single roof, actual dwelling together, absence animo revertendi; constructive presence or actual absence. Divergent results have followed the application of these criteria operating in some cases to establish the status, and in others to deny it. It is not our purpose to bring to view the many decisions which illustrate, not only the application of these tests, but also that the common denominator is the evident purpose of the statute or contract involved. ''Household'' cannot be satisfactorily defined as an abstract term. Definition by lexicon supplies elements which are seized upon by opposing interests, and isolated from other factors furnish material relevant to contradictory conclusions.

We are dealing with a contract of insurance. We must inquire what the parties thereto meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision. This provision has been repeatedly held to reveal an obvious purpose to avoid a multiple coverage of several vehicles owned by members of the same family, who, by their close intimacy, may be expected to use the cars of each other

without hindrance and with or without permission, thus increasing the liability of the insurer who has a right to expect each owner to contract for his own coverage. Concession is made to the casual permissive use by the insured of vehicles of other persons, whose permission may be considered episodic or not subject to abuse.

A case directly in point is Heffernan v. Milwaukee Mechanics' Insurance Company, 33 Ohio App. 207, 169 N. E. 33; Id., 121 Ohio St. 499, 169 N. E. 573, 574. Here, the husband and wife had been separated and were living apart. A divorce had been sought but denied, but the husband was ordered to pay alimony. The car of the wife was taken, and claim under her policy was paid by the insurer. It was later found that the car had been taken by the husband, and the insurer brought suit for refund of the coverage paid for its loss. The clause involved in the instant case was the basis for its claim. In holding that there was no ground for recovery, the Ohio Court thus construed the term: ''This policy contained a general covenant of insurance against theft; the exception relieved it from theft only if it were committed 'by an person or persons in the assured's household.' It is evident that the parties to the contract did not have in mind the common-law rule that a husband or wife cannot steal from one another, but had in mind rather the nonliability of the insurance company when the theft was committed by a member of the household. Had the husband been a member of the household, there would have been no liability under the terms of of the policy. The parties were contracting with reference to the status of the husband and others as members of the household, and, since the husband was not a member of the wife's household at the time of the theft of the Sedan, a liability arose under the policy, because it restricted its nonliability solely to instances where the theft was committed by a person in the assured's household.'' The Court concluded as follows [33 Ohio App. 207, 169 N E. 34]: ''Now the record in this case—as it is conceded that the plaintiff

in error and her husband did not and had not lived together for some time—shows that the husband was not a member of her household.

". . . if the insurance company who made this policy wanted to guard against the taking of an automobile by a man who in the eyes of the law is the husband, but as a matter of fact is not a resident or an inmate of the family, either by service or living in the family, it might do so by putting such a provision in the policy. . . .

"The record in this case shows that this car was taken . . . by a person who was not an inmate of her family, and had not been such for a long time. . . .

"The record does show that it was not taken by one who comes within the exception here, and the only loophole on which the defendant in error won, and hopes to win, is because years afterwards it turned out that a husband, who was not living with his family, but who had separated from his wife and family, and was not an inmate of the household, took the car . . . the only fact it relies upon is that because, notwithstanding the broken relation between these persons, or at least the relation strained to such an extent that they lived separate and apart . . . they still were one in the eyes of the law. . . .

"We think the verdict, and the judgment based thereon, is contrary to the weight of the evidence, and is contrary to the law; . . ." Other insurance cases supporting this view include: Andrews v. Commercial Casualty Insurance Company, 128 Neb. 496, 259 N. W. 653; Barrett v. Commercial Standard Insurance Company, Tex. Civ. App., 145 S. W. (2d) 315; Jackson v. State Farm Mutual Auto Insurance Company, La. App., 32 So. (2d) 52; Island v. Fireman's Fund Indemnity Company, 30 Cal. (2d) 541, 184 P. (2d) 153, 173 A. L. R. 896. See also the opinion therein by the California District Court of Appeal, 172 P. (2d) 520.

A concession that the insured's house in New Orleans was in legal definition a homestead for the purpose of

supporting an exemption, and that he recognized a legal, if not a moral, obligation to support his wife, is not at war with a conclusion that he also had a home and household in Mobile, into which he had assembled a separate entourage or domestic entity, with whom he lived on terms of an intimacy which he had denied to his lawful wife, and whom he likewise supported, and whom, by his acts and declarations, he lived with and claimed as his wife. The later divorce procured by the wife established and confirmed a status which had theretofore existed as a fact, and was so recognized by the law, else the divorce would not have been authenticated as a pre-existing fact.

In this connection, the language in Lumbermen's Mutual Casualty Company v. Pulsifer, D. C., 41 F. Supp. 249, 251, is in point. The Court said: "Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is used in the policy."

In this connection, we have given weighty but not controlling consideration to the fact that the husband and wife were not living together under the same roof, but have taken into account the reasons therefor, and the further fact that the policy provisions, if there be ambiguity, must be construed favorably to the insured, or those who, as here, acceded to his rights.

The policy provided that suit thereon by a judgment creditor must be brought within two years and one day from the date the cause of action arose. The judgment against Stewart was procured April 24, 1942. The original bill herein was filed herein on November 8, 1943. The only defendant named was The Travelers Insurance Company. It prayed for a discovery of the policy, and for decree thereon predicated upon the judgment. Answers to interrogatories disclosed for the first time that the policy was issued by The Travelers Indemnity Company and The Traveler Fire Insurance Company, members of a group known as The Travelers. The letterheads of the companies' agent—to cite one example—

carried the designation, "The Travelers, The Travelers Insurance Company, The Travelers Indemnity Company. The Travelers Fire Insurance Company", listed in separate lines. As stated, the particular coverage was given by the component unit the Indemnity Company.

In the answer of the appellees to interrogatories, they also made discovery of interlocking control of the three companies. It is revealed that they are housed together in a group of three buildings owned by The Travelers Insurance Company; that the following officers are common to all three: the president, vice-president and general counsel, agency secretary, comptroller, auditor, a vice president and treasurer. Other officials are common to two of the companies. They use a common form of policy. All the stock of the Travelers Indemnity Company, except a few qualifying shares owned by the directors, is owned by The Travelers Insurance Company.

We are impressed that these disclosures were vouchsafed grudgingly and only under legal compulsion. After the interrogatories, as answered, were filed, the complainant amended her bill making these companies defendant. The amended bill was filed April 25, 1945. Other amendments were filed December 24, 1945, and January 4, 1946, amplifying the fact of notice to the defendants.

It is evident that if the limitation began to run on April 24, 1942, the date of the judgment, and was not tolled by the filing of the original bill on November 8, 1943, the bar, if applicable, would be effective.

The amendments perfecting the original bill, both as to the necessary parties and the procedural prerequisites as to notice, did not constitute a new cause of action. This is especially true here since the knowledge of the identity of the parties lay peculiarly within the knowledge of the defendants who had a common agent. There was no prejudice to them. The amendments presented no new picture of the cause of action. Broom v. Southern Railway, etc., 115 Miss. 493, 76 So. 525; Reeves v. Globe

Indemnity Company, 185 La. 42, 168 So. 488; 54 C. J. S., Limitations of Actions, §§ 275, 279, 280; McGinnis v. General Exchange Ins. Corporation, 142 Kan. 338, 46 P. (2d) 876.

In Jackson v. American Employers' Ins. Co., 202 La. 23, 11 So. (2d) 225, the Court held that: Where three insurance companies were doing business as a group under the title "The Employer's Group of Boston, Mass.", letterheads of which bore the names of all three companies, having the same office for their claim department, the same telephone, same manager and same employees in that department, the filing of suit against one of the companies under mistaken belief it was insurer under policy covering automobile causing injury, after plaintiff's attorney had been led to believe by letter from manager of claim department that the company sued was the company which had issued the policy, was sufficient to interrupt the one-year period of prescription against the company which had issued the policy. The Court concluded: "The original suit, having been brought against the company that had not issued the policy, could not have resulted in a judgment either against that company or against the company that had issued the policy. But the filing of the suit gave sufficient notice to the company that had issued the policy to interrupt prescription. The causes for which the attorney for the plaintiff was misled until the period of prescription had run are attributable to the method of doing business by the claims department of both the defendant in this suit and the defendant in the original suit. There is no accusation— and no evidence or suggestion—of any wilful deception on the part of the manager of the claims department of the Employers' Group. But, in the circumstances of this case, it would be unjust to hold that the filing of the original suit did not interrupt prescription."

There was no finding of facts by the chancellor although that was requested. We have been compelled, therefore, to examine all the principal assignments. It is

our conclusion that the learned chancellor erred in dismissing the bill, and that appellant is entitled to a recovery under the policy in the sum of $7,653.44, with interest thereon from April 24, 1942.

Reversed and decree here for appellant.