Richard Schoenknecht, Plaintiff-Appellee, v. Prairie State Farmers Insurance Association, an Inter-Insurance Exchange, Defendant-Appellant.

Gen. No. 11,356.

Second District, First Division.

September 21, 1960.

Sears, Streit, and Tyler, of Aurora, for appellant.

O'Brien, Burnell, Puckett, and Barnett, of Aurora, and Ross, McGowan, and O'Keefe, of Chicago, for appellee.

DOVE, J.

Prairie State Farmers Insurance Association, the defendant, issued an automobile policy of insurance to Richard Schoenknecht, the plaintiff, effective November 28, 1956 and expiring May 28, 1957. This policy specifically insured plaintiff's Buick automobile

and contained among other, the following insuring agreements,

"1. Coverages A and B—
(a) Bodily injury liability and
(b) Property Damage liability.

"IV. Use of Other Automobiles,
If the named insured is an individual or husband and wife and if during the policy period such named insured or the spouse of such individual if a resident of the same household, owns an automobile covered by this policy and classified as 'pleasure and business' such insurance as is afforded by this policy under coverages A, B, C, F, G, or H with respect to said automobile applies to any other automobile subject to the following provisions: (a) With respect to the insurance afforded under coverages A and B the unqualified word 'insured' includes (1) such named insured and spouse and (2) . . .
(b) . . .
(c) Insuring Agreement IV does not apply: (1) to any automobile owned by, registered in the name of, hired as part of a frequent use of hired automobiles, by, or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse; (2) to any automobile while used in the business or occupation of such named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, private chauffeur or domestic servant."

The record discloses that plaintiff is a resident of Carpentersville in Kane County and has been for

84

many years, employed by The Peoples Gas Light and Coke Company, a public utility doing business in Chicago. His duties were to answer complaints made to his employer regarding leakage of gas and to service gas appliances. His working hours were from 8 o'clock a. m. until 4:30 o'clock p. m. each weekday and his employer furnished him with a Chevrolet passenger car to be used by him in the performance of his duties. At the conclusion of his day's work it was the duty of plaintiff to return the Chevrolet automobile belonging to his employer to the shop of his employer at 4643 West Irving Park Road, Chicago, Illinois.

On May 2, 1957 plaintiff made his last call of the day for his employer at or near Belmont and Halsted streets in Chicago. Instead of returning the car he was driving, to the shop of his employer at 4643 West Irving Park Road he proceeded to visit friends living on Chicago and Ashland Avenues in Chicago. About eleven o'clock on the evening of that day, May 2, 1957, plaintiff was driving this Chevrolet car in a westerly direction on Fullerton Avenue near Leavitt Street in Chicago and ran into the rear end of an automobile owned and then being operated by Margaret Kuskowski. The collision forced the Kuskowski car forward and it ran into the rear end of an automobile then being operated by James Burns, a minor, but owned by James P. Goss. As a result of these collisions Margaret Kuskowski and James Burns each sustained personal injuries and the Kuskowski and Goss cars were damaged.

Notice of the accidents was given by the plaintiff to the defendant, Insurance Company, and subsequently the injured parties made claims against the plaintiff for the damages they sustained and the defendant was promptly notified thereof. Upon the advice of counsel the plaintiff settled the personal injury claim of Margaret Kuskowski and thereafter she filed an

action in the Municipal Court of Chicago to recover her property damage. Subsequently Burns and Goss filed their action in the Superior Court of Cook County to recover for the damage each of them sustained and these actions are pending and undetermined. Defendant has consistently refused to recognize any liability under the policy.

On March 17, 1959 the instant complaint was filed by the plaintiff seeking to recover from the defendant the $1200.00 he had paid in settlement of the personal injury claim of Mrs. Kuskowski. The complaint also prays for a decree construing the provisions of this insurance policy, declaring the rights of the parties thereto and for an order directing the defendant to appear and defend the several pending actions growing out of this collision.

The defendant appeared and filed its motion to dismiss the complaint. Motions were then filed by both the plaintiff and the defendant, each supported by affidavits and each party seeking a summary judgment. At the conclusion of the hearing of the several motions the trial court entered an order construing the provisions of the policy and finding that the plaintiff was entitled to the benefit and protection of this policy of insurance and should be reimbursed for the settlement he made with Margaret Kuskowski. The court then rendered judgment in plaintiff's favor and against the defendant for the amount of the settlement and directed the defendant to assume plaintiff's defense in the several causes pending in the Cook County Courts. To reverse this judgment order defendant appeals.

The theory of appellant is that the provisions of this policy do not cover the Chevrolet automobile which was involved in the collision because it was a car which had been furnished to plaintiff by his employer for the regular use of the plaintiff. Counsel

insist that to extend the coverage to the occurrence in question requires defendant to insure two automobiles and thereby increase its risk without any additional premium; that the wording of the policy is clear and unambiguous and expressly excludes from its provisions this Chevrolet automobile which was furnished to the insured by his employer for his regular use.

The theory of counsel for appellee is that the Chevrolet car he was driving upon the occasion in question was furnished appellee for regular use only in connection with his employment; that his use of his employer's car at the time of the accident was not in connection with his employment but he had deviated from the orders of his employer and was on an highly irregular, isolated, and unauthorized use. Therefore, under the facts disclosed by this record, the exclusion clause, to the effect that the policy does not cover an automobile furnished to plaintiff for his regular use, is not applicable.

Counsel for appellant cite and rely on Rodenkirk v. State Farm Mut. Automobile Ins. Co., 325 Ill. App. 421, 60 N.E.2d 269. This was a garnishment action brought by Rodenkirk against the defendant insurance company to recover, for the use of Louis Deitenbach, the amount of a judgment which Deitenbach had recovered against Rodenkirk in an action growing out of an automobile accident which occurred while Rodenkirk was driving a car belonging to John Meyer. It appeared in that case that Rodenkirk had been issued an insurance policy by the defendant company which provided protection to him from liability for accidents while driving his own car and the policy also contained a so called "drive other private passenger automobiles" clause. The evidence disclosed that Rodenkirk's daughter, Nona, was engaged to marry John Meyer and upon Meyer's induction into the army he left his car in the care of the Rodenkirk family and told Mr.

87

Rodenkirk to keep the car up and that he could use it as he saw fit. Thereafter while driving Meyer's automobile Mr. Rodenkirk was involved in the accident with Deitenbach and the garnishment proceeding sought to hold Rodenkirk's insurance company liable on the policy which it had issued to him.

The exclusionary portion of the "drive other cars" provision in the Rodenkirk policy recited that the coverage to other cars did not apply to any automobile "furnished for regular use to the named insured." The wording is substantially the same as found in the exclusionary clause in the instant policy. The Appellate Court held that the Meyer car came within the exclusionary provision of the policy, stating that by Meyer giving the car to Rodenkirk to use it as he saw fit necessarily meant that the car was furnished Rodenkirk for his regular use. The court then said (p. 433): "It is evident that the purpose on the part of the company in extending the driver's regular insurance without the payment of any additional premiums would apply to the occasional driving of cars other than his own, but would be inapplicable to an automobile furnished to the insured for his regular use." And in commenting upon the contention that the evidence disclosed that Rodenkirk used the car only upon the occasion of the accident the court said the record showed that Rodenkirk had used it on many occasions but the matter for determination, said the court: "is not whether Rodenkirk used the automobile on one occasion but—was he furnished the automobile for his regular use? If he was furnished the automobile for his regular use there could be no recovery under the policy."

Farm Bureau Mut. Automobile Ins. Co. v. Boecher, an Ohio court of appeals case reported in 48 N.E.2d 895, was an action by an Insurance Company for a declaratory judgment. This case was cited and com-

mented upon in the Rodenkirk case, supra, and involved the construction and application of a "drive other private passenger automobiles" endorsement similar to the clause contained in the policy issued to the plaintiff in the instant case. It appeared in that case that Boecher was employed by the Lynch Motor Company as a salesman and that the car he was driving at the time of the collision was one of many cars which belonged to his employer and which he could have used for demonstration purposes or for trips to and from his home. He had never driven the particular car involved in the collision on any previous occasion but the court held that it was one of a group of cars furnished him for his regular use and therefore was not covered by the policy.

In the Rodenkirk case it appeared that the insured had the right to use and drive the Meyer car whenever and wherever he desired without any limitations of any kind or character. In the Boecher case the car involved in the collision was one of a group of cars furnished Boecher by his employer for regular use. The facts in these cases are distinguishable from the facts in the instant case. Here this car, upon this particular occasion was not being used during business hours or in furtherance of insured's employer's business. It was not, at the time of the accident furnished plaintiff for his regular use. His employer never furnished it to him for any such purpose. He was using the car without his employer's knowledge or consent. His use was an unauthorized one. There is nothing in this exclusionary clause which eliminated coverage in the event the car involved was being operated by the insured without the owner's knowledge, permission or consent and in the absence of any such exclusionary provision the policy covered the car the insured was then operating. Some policies do have a provision to the effect that the insurance afforded thereby also

89

applies to the named insured with respect to the use and operation of any other automobile by the insured provided such use and operation is with the permission of any person having the right to grant such permission and use. (Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So.2d 885, 886.)

In Pacific Automobile Ins. Co. v. Lewis, 56 Cal. App.2d 597, 132 P.2d 846, it appeared that one Wells was a joint owner of a Ford automobile which was insured by the Pacific Automobile Insurance Company. Wells was employed as a salesman by an automobile sales agency and the agency provided him with a demonstrator car for his own use. He also had the right to use other cars owned by the agency, and from time to time he did use many cars belonging to his employer. It was not unusual for him to drive one of his employer's cars for his personal benefit during his working hours and frequently he took a demonstrator car home with him in the evening and sometimes used this car for his personal benefit while off duty. He lived and worked in San Diego and had never driven one of these cars furnished to him by his employer outside of that city. Upon one occasion he obtained permission from his employer to drive one of his employer's cars to Pomona on a personal matter and while on this trip he became involved in an accident. The Insurance Company insisted that the car involved in the accident which Wells was driving was not covered by the policy issued to him on the Ford automobile because the "drive other automobiles" clause in that policy provided that such coverage "should not apply while he was driving another automobile furnished for regular use to the named insured."

In holding otherwise the court said: "Whether an automobile is furnished by another to an insured for

his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes. It may be assumed that when a car is furnished all of the time for business purposes, with permission to use the same for incidental personal purposes, all within a certain area, the car might be said to be furnished for regular use within that area. . . . The most reasonable view of the situation is that, whatever may be said of other times and places, this car was not furnished for his regular use, insofar as this particular trip is concerned and that at the time and place in question the first exception provided by the clauses of the policy which are here in controversy was not applicable. In our opinion, the court's finding and conclusion that at the time of this accident this automobile was not one which had been furnished to him by his employers for his regular use, within the meaning of the policy, must be sustained."

In Miller v. Farmers Mut. Automobile Ins. Co., 179 Kan. 50, 292 P.2d 711, it appeared that the plaintiff was the owner of a Pontiac automobile which was insured by the defendant and which provided him with coverage if he used other automobiles. The exclusion clause in that policy was the same as in the instant case, and provided that the insurance did not apply to any automobile which was furnished the insured by others for the "regular use" of the insured. Miller was an employee in the office of the Adjutant General of the State of Kansas and was involved in an automobile collision while driving a Chevrolet station wagon owned by his employer. The Insurance Company de-

91

nied that he was covered by the policy which it had issued to him, and he brought suit for a declaratory judgment.

The evidence disclosed the plaintiff had used the Chevrolet station wagon not more than two or three times a year, and then only on short trips. In the course of its opinion which held that Miller was covered by the policy issued to him by the defendant, the court said: (p. 715) "A study of the authorities discloses that courts have found it difficult to lay down any hard and fast rule, and that, generally speaking each case has been decided upon its own facts and circumstances. As a matter of practical everyday experience, the average person occasionally drives an automobile other than his own. The purpose and effect of the 'use of other automobile' provisions in a policy are obvious. It extends the driver's insurance to infrequent or casual driving of other automobiles, but excludes him from coverage with respect to his regular use of an automobile not covered by the policy. . . . We agree with the trial court that under the facts of this case, the use which plaintiff made of the vehicle in question clearly was so infrequent and casual that it is not to be considered as one furnished to him for his regular use within the meaning of the policy."

In Comunale v. Traders & General Ins. Co., 116 Cal. App.2d 198, 253 P.2d 495, it appeared that the defendant insurance company had issued a policy to Percy Sloan on his Plymouth passenger car. John Sloan, a brother of Percy owned a truck which he used in his laundry and cleaning business and Percy arranged with John for the use of the truck for Percy to drive to and from his work when John was not using the truck. For this use of the truck Percy agreed to pay John what public transportation would have cost him and did pay him $3.00 during a ten day period during which time Percy used John's truck to go to work.

On the tenth day, for the first time, Percy used the truck to pay a social visit to his Aunt and while so driving the truck an accident occurred. The policy covering the Plymouth car which had been issued by the defendant company to Percy Sloan contained a "drive other cars" provision and the exceptions thereto generally in use. Among other things the trial court held that John's truck had not been furnished to Percy for "regular use" since it had been used only specifically to drive to and from work for a specific compensation and had been used for no other purpose except on the one occasion at which time the accident occurred and therefore Percy did not have the truck for regular use at the time of the occurrence and the exclusion did not apply.

Leteff v. Maryland Casualty Co., a Louisiana court of appeals case, reported in 91 So.2d 123, was an action brought by Andrew L. Leteff against Leslie W. Ventress, Jr. and the Maryland Casualty Company to recover for serious and permanent injuries which Leteff sustained while riding as a guest passenger in a Plymouth Station Wagon owned by Leslie W. Ventress, Sr. and being driven by his son, Leslie W. Ventress, Jr. In the trial court the plaintiff recovered a judgment for $10,000.00 against the Casualty Company, the limit of its liability under its policy and for $50,000.00 additional against the defendant, Leslie W. Ventress, Jr.

It appeared that Ventress, Jr. was 22 years of age and owned a Chevrolet pick-up truck which was insured in his name by the Maryland Casualty Company. The limit of liability under the policy to any one person was $10,000.00. This policy so far as applicable to the instant case provided that if the named insured owned the car described in the policy that then the insurance afforded by the policy for bodily injury liability applied to any other automobile used by insured

except to one furnished to the named insured for regular use. The evidence disclosed that the insured did not have a right to use or drive the station wagon belonging to his father unless he first obtained permission from his father. This he always did and at the time of the accident he had obtained his father's permission to use it. The station wagon was primarily used by the Mother of the insured and there were two sets of keys to this car, one of which Ventress, Jr. kept on his key ring and the other set was kept by the Mother on a table in the dining room. Under these facts the court held that the station wagon was not furnished for regular use to the insured within the meaning of the policy. The court did hold, however, that the station wagon was furnished by the father for regular use by the mother, a member of the household consisting of Ventress, Sr., his wife and their son, the insured, and under the provisions of the policy any coverage under the policy issued to insured by the Casualty Company was excluded and therefore the judgment of the trial court as to the Casualty Company was reversed.

In Harter v. Country Mut. Ins. Co., 20 Ill.App.2d 413, 156 N.E.2d 243, it appeared that an insurance policy was issued by the defendant to Omar N. Harter on a 1954 Packard automobile registered in his name. This policy also provided that the benefits payable thereunder should apply to the named insured or his spouse in the event injury is sustained while riding in or alighting from any other private passenger automobile not owned or registered in the name of, or furnished for the regular use of any such person. The court stated that there is no uncertainty as to the meaning of the language of the policy. "It plainly states", said the court (p. 420–421), "that an insured, injured while riding in any other car furnished for

the 'regular use' of such person, shall not be entitled to certain benefits payable under the policy. Taken in its plain, ordinary sense, this language can only mean that the insured is not covered by the policy on the insured vehicle if he is injured in some other car which he can regularly use. The policy does not state that the exclusion applies only in case the other car is used on any particular number of occasions. On the contrary, an insured, upon reading the same, could readily understand that the protection thereunder did not extend to every car in which he might be riding, but only to those which he did not have the right to use regularly. The factor determining whether the car used comes within the exclusion clause is whether such car is furnished for the regular use of the insured?"

In Sperling v. Great American Indemnity Co., 7 N.Y.2d 442, 166 N.E.2d 483, the plaintiff had procured a judgment against Christine Nystrom for $125,000.00 for negligently causing the death of plaintiff's testate and the instant action was brought by the judgment creditor to compel the defendant insurer to pay the judgment to the extent of its coverage under an automobile liability policy. The policy had been issued by the defendant to Ruth Nystrom, the mother of Christine, and was in full force and effect at the time of the accident which resulted in the death of plaintiff's testate. On the day of the accident, Christine, sixteen years of age resided with her mother and had a learner's permit to operate a motor vehicle but not a regular license. Between 12:30 and 1:00 o'clock p. m., on December 30, 1957 she stole an automobile and while operating the stolen car negligently crashed into the rear of another car fatally injuring its occupant who was plaintiff's testate.

The insurance policy issued by defendant to the mother of Christine Nystrom contained these provi-

sions under the heading "Persons Insured": (A) with respect to the owned automobile (1), the named insured and any resident of the same household (2), any other person using such automobile, provided the actual use thereof is with the permission of the named insured; (B) with respect to a nonowned automobile (1), the named insured (2), any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative.

The trial court held that Christine Nystrom, the judgment debtor, was covered by this policy while operating a stolen automobile under clause (2) of paragraph (B) because she was a relative and driving a private passenger car not regularly furnished for her use.

The insurer in the Nystrom case contended that the word "furnished" used in paragraph (B) of clause (2) implies consent and permission, so that the phrase "not regularly furnished for the use of" can only be interpreted to mean an automobile voluntarily supplied by the owner to such relative for occasional as distinguished from regular use. In holding otherwise the court said that the policy did not exclude, as an insured, a relative who was driving a nonowned automobile without permission of the owner. In the course of its opinion the court said: "To read the requirement of permission into the word 'furnished' would not only entail rewriting the phrase 'not regularly furnished' so as to read 'occasionally furnished, with the permission of the owner' thereby converting the negative condition 'not regularly furnished' into an affirmative condition that the car be 'furnished'—but would distort the purpose which the limitations of coverage was plainly designed to serve. The exclusion of coverage for relatives driving nonowned automobiles was, by its terms, concerned with regularity of use not permissiveness of use, and was designed to protect the

96

company from being subjected 'to greatly added risk without the payment of additional premiums.' "

The court in answer to the contention that it would be against public policy to require the insurer to pay the bulk of the judgment recovered against Christine since she would be the beneficiary of the result of her own crimes said that the fact that Christine had previously misappropriated the car with which she negligently caused the death of plaintiff's testate was wholly irrelevant in the wrongful death action; that the insurer here is called upon to indemnify Christine against the consequences of her negligence in the operation of a motor vehicle, not against the criminal consequences stemming from her wilful misappropriation of the car and that the manner in which she acquired the automobile had nothing whatever to do with her liability for its negligent operation.

In the instant case the car involved was not a stolen car. It was being used, however, at the time of the accident by the plaintiff without the knowledge of or permission of its owner but according to the provisions of the policy permission to use this car was not a condition of coverage with respect to the use of a nonowned automobile. Plaintiff was furnished this car for his sole use in connection with the business of his employer during his working hours. He had never used the car to take him anywhere except upon the business of his employer and during his working hours. The only times he had ever used it was during his working hours and in furtherance of his employer's interest except on the occasion in question. The use of this car at this time was, under the authorities, an isolated, casual, unauthorized use of an automobile other than his own and comes within the insuring agreements of this policy designated "use of other automobiles." If the manner in which Christine Nystrom acquired the automobile she was driving at the time

97

of the accident as set forth in Sperling v. Great American Indemnity Co., 7 N.Y.2d 442, 166 N.E.2d 483, supra, had nothing whatever to do with her liability for its negligent operation so in the instant case, the manner in which appellee acquired the Chevrolet car of his employer had nothing whatever to do with his liability for its negligent operation. And the fact that the car which was involved in the accident had been furnished appellee by his employer for his regular use during his hours of employment was immaterial under the facts disclosed by this record.

The relationship between plaintiff and defendant is purely contractual. (Leslie v. Standard Acc. Ins. Co., 327 Ill. App. 343, 346, 64 N.E.2d 391.) The rights of the parties to this proceeding and the liability or nonliability of the appellant depend solely upon the provisions set forth in the policy it issued to appellee. (Immel v. Travelers Ins. Co., 373 Ill. 256, 260, 26 N.E.2d 114.) The trial court's judgment is consistent with the facts found in this record, is supported by the authorities, and is affirmed.

Judgment order affirmed.

McNEAL, P. J., concurs.

SMITH, J., concurs.