LUMBERMENS MUTUAL CASUALTY
COMPANY, Appellant,

v.

CONTINENTAL CASUALTY COMPANY,
Ernest P. LaBate, Administrator of the Estate of Juanita Jelich, Deceased, Carl Ahlstrom and Mary Carolyn Ahlstrom, Appellees.

CONTINENTAL CASUALTY COMPANY,
Appellant,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY, Ernest P. LaBate, Administrator of the Estate of Juanita Jelich, Deceased, Carl Ahlstrom and Mary Carolyn Ahlstrom, Appellees.

Nos. 292, 293.

Supreme Court of Alaska.

Sept. 5, 1963.

Rehearing Denied Dec. 4, 1963.

James J. Delaney, Jr., Plummer, Delaney & Wiles, Anchorage, for appellant, Lumbermens Mut. Cas. Co.

David H. Thorsness, Hughes, Thorsness & Lowe, Anchorage, for appellant, Continental Cas. Co.

Russell Arnett, Anchorage, for appellees, Carl Ahlstrom and Mary Carolyn Ahlstrom.

Robert E. Hammond, Anchorage, for appellee, administrator of the estate of Juanita Jelich, deceased.

NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

These cross-appeals grow out of a dispute over the proper construction and application of certain provisions in automobile liability insurance policies issued by Lumbermens Mutual Casualty Company, hereinafter referred to as Lumbermens and Continental Casualty Company, referred to herein as Continental.

The basic facts are that Juanita Jelich, wife of the named insured, George Jelich, was killed while driving an automobile that had been rented from a car rental company by Troy Cummings. Cummings was riding in the front seat with Juanita Jelich and the appellees Carl and Mary Ahlstrom were riding in the rear seat. The latter were injured and brought suit against the administrator of the estate of Juanita Jelich based on deceased's alleged negligence. The administrator demanded that Lumbermens defend that suit on the ground that operation of a non-owned automobile by Juanita was covered by the policy issued to George Jelich. Lumbermens then commenced a separate action for declaratory judgment, which is the suit now before us, asking the court to declare that its policy of insurance issued to George Jelich furnished no coverage to Juanita Jelich nor to the administrator of her estate under the circumstances. It also asked the court to declare that a policy of insurance issued by Continental to Federal Automotive Services Corp., doing business under the name of Avis Rent-a-Car, from whom Troy Cummings had rented the car Juanita Jelich was driving, did furnish insurance coverage to Juanita Jelich and her administrator. Continental's responsive pleading denied that its policy of insurance furnished any coverage to Juanita Jelich and alleged that Lumbermens' policy did cover her at the time of the accident.

The first question to be decided is whether the trial court erred in holding that Juanita Jelich was a resident of the same household as George Jelich within the meaning of

Lumbermens' policy which stated in part, as to persons insured:

The following are insureds under Part I:

"(b) * * * With respect to a non-owned automobile,

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner;

* * * * * *

"Definitions

"Under Part I:

" 'named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

" 'relative' means a relative of the named insured who is a resident of the same household * * *.[1] "

George and Juanita Jelich had been living together as man and wife with their three children in the family home being purchased by them as tenants by the entirety. On August, 9, 1960 Juanita filed suit for divorce. For approximately two weeks prior to the filing of the suit George had been staying with relatives or at a downtown hotel. On August 19, 1960 Lumbermens' policy of insurance was issued. George had signed an appearance and waiver in the divorce action. Juanita and the children continued to reside in the family home. George visited at the family home several times a week and spent Sundays there. · He was paying the house and utility payments, buying all groceries used by the family, kept his tools and equipment in the home, and occasionally took Juanita and the children out for meals. It was George's wish to effect a reconciliation with his wife. The matter had been discussed between them but no decision had been reached. George re-

ceived most of his mail at the family home and the balance at his office. The automobile covered by Lumbermens' policy had been used by both George and Juanita during their separation and up to the time of Juanita's death.

■ Lumbermens argues that the phrase "resident of the same household" should be interpreted as including only persons living "under the same roof" with the named insured. The insurer's theory apparently being that where the named insured, his spouse and relatives all live in the same house, all would have normal opportunity to use the same automobile rather than resort to the use of non-owned automobiles. The argument infers that the likelihood that a spouse and relatives would more frequently use non-owned automobiles when not living in the same house with the named insured is an increased risk not intended to be covered by the policy provisions under consideration.

No general rule for the interpretation and application of the policy clause under consideration occurs to us. The facts of the particular case must be examined in order to determine when the named insured, or his spouse or relatives are or cease to be residents of the same household. If either of them was eating and sleeping away from the family residence for a temporary period of time with the intention of returning, it could not ordinarily be said that their usual residence had been abandoned in favor of the temporary arrangement. Temporary absences frequently occur in the normal household because of family emergencies, business requirements, vacations and for a variety of other reasons. It would seem that the policy provision under consideration was specifically designed to cover such situations and provide protection while the absent person happened to be operating a non-owned automobile. If the provision were

---

1. Counsel have briefed the case on the assumption that Juanita Jelich was a "relative" of the named insured. At a post argument conference counsel agreed that as George Jelich's spouse, she would be covered as a "named insured". The basic question of whether she was a "resident of the same household" must be decided regardless of which definition is applied.

given the restricted interpretation urged by Lumbermens, protection would not extend to any situation where the spouse or relative was temporarily not eating and sleeping in the same house as the named insured. Such an interpretation of the meaning of the clause would be narrower than that intended by the policy in our opinion.

In the case before us George Jelich advised Lumbermens that his residence was 3800 Barbara Drive, Spenard, when he procured the policy. Actually he had been eating and sleeping away from the family home for approximately three weeks and a divorce action was pending when the policy issued. The fact that he advised Lumbermens that his residence was at the place where he had normally resided and where he then maintained a home and family indicates that his intention was not to give up his residence at that address. This reasoning is reinforced by his testimony that he was attempting to effect a reconciliation with his wife at the time of her death and by the fact that he used the family home for every usual purpose except that of sleeping and eating.

George Jelich's situation at the time his wife Juanita had occasion to drive a non-owned automobile was hardly different, from the standpoint of the insurer's risk, than it would have been had he been away from home on business, on vacation, or because of some family emergency of a different nature. He had no intention of giving up his residence at 3800 Barbara Drive where his spouse was residing. We shall not assume that his separation from his wife and family was irreconcilable and that existing marital difficulties would not be settled. Under these facts we hold that the trial court was correct in finding that George and Juanita Jelich were residents of the same household at the time she met her death while operating a non-owned automobile.[2]

The next point raised is the claim of both Lumbermens and Continental that the trial court erred in finding that Juanita Jelich had the implied permission of the owner of the automobile to operate it.

At the time Cummings rented the vehicle from Avis he signed a document entitled Standard Rental Agreement provided by the company. This agreement contained twelve paragraphs in fine print on the back of the cover page of the rental agreement booklet. Paragraph 10 stated in part:

"10. THE RENTER EXPRESSLY AGREES THAT THE MOTOR VEHICLE LEASED TO HIM SHALL NOT BE OPERATED:

\* \* \* \* \* \*

"f. . By any person other than (A) the Renter who signed this rental agreement, or (B) any additional Renter who signed this agreement, or (C) any other person who would similarly be entitled to coverage under the above mentioned insurance policy, provided all such operators shall be qualified licensed drivers \* \* \*."

Both Lumbermans and Continental argue that under the quoted provisions Cummings as renter had no authority to permit the operation of the automobile by any person except one entitled to coverage under the insurance policy referred to. To determine who is covered by the policy, they argue, it is only necessary that one refer to paragraph III of that document where "insured" is defined. Eight classifications of persons are mentioned in this paragraph and since none of them seem to cover a mere permittee of the renter, then it follows, appellants say, that Cummings was not authorized to give Juanita Jelich permission to operate the automobile.

Legal title to the vehicle was in Federal Automotive Services Corp. which engaged

2. See Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Swit., 35 N.J. 1, 170 A. 2d 800 (1961); Neidhoefer v. Automobile Ins. Co. of Hartford, Conn., 182 F.2d 269 (7th Cir., 1950); Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So.2d 885 (1949); Heffernan v. Milwaukee Mechanics' Ins. Co., 33 Ohio App. 207, 169 N.E. 33 (1929).

extensively in the car rental business in Alaska under the business name of Avis Rent-a-Car. The Commissioner of Public Safety for Alaska had had some difficulty during 1960 in obtaining written assurance from Federal Automotive that its Alaska fleet was carrying insurance in compliance with the Alaska Motor Vehicle Safety Responsibility Act. On May 31, 1960 the Commissioner was finally furnished certificates executed by Continental's agents certifying that Federal Automotive was insured under the Alaska Motor Vehicle Safety Responsibility Act and by Continental's policy No. CDC 5208856 covering all driverless for rent automobiles owned by Federal Automotive except those leased for a period of one year or more. The policy was certified as being effective from October 1, 1959 to October 1, 1962.

It is undisputed that at the time Cummings rented the automobile on October 4, 1960 there was no copy of Continental's policy of insurance available anywhere in Alaska. Neither the manager nor any of the employees of Avis Rent-a-Car in Anchorage had ever seen a copy of the policy and were not familiar with any of its provisions except as they were briefly described in the Standard Rental Agreement. Cummings did not read the rental agreement nor did he ask to see a copy of the policy of insurance mentioned therein.

The trial court found that the rental agreement was ambiguous with respect to Cummings' authority to permit another person to drive the rented car. It found that since he could not have learned from the language of the rental agreement that he was precluded from allowing a party not signatory to the agreement to drive, that Juanita Jelich was driving with the implied permission of Federal Automotive and that Continental was precluded from denying coverage to the administrator of her estate.

If Cummings had read the rental agreement, he would have learned from paragraph 10(f) that he could permit the rented vehicle to be operated by "(A) the Renter who signed this rental agreement", which

was himself; or by "(B) any additional Renter who signed this agreement", of which there were none, or by "(C) *any other person who would similarly be entitled to coverage under the above mentioned insurance policy,* provided all such operators shall be qualified licensed drivers". (Emphasis supplied.) The emphasized provision is unintelligible. The identity of "any other person" permitted to drive the automobile is made to depend upon whether they "would similarly be entitled to coverage under the above-mentioned insurance policy". The word "similarly" can not be intelligibly related to "any other person" or to the preceding portion of the sub-paragraph, nor to the rental agreement as a whole, in a meaningful manner.

Continental argues that "similarly" refers to the persons identified by clauses (A) and (B) of the same sub-paragraph and since these refer to persons who have signed the rental agreement, clause (C) refers to the same class of persons. We find this reasoning unenlightening. The most that can be learned from clause (C) is that the persons intended to be included must be qualified licensed drivers. There is no claim that Juanita Jelich did not fulfill this requirement.

Clause (C) does not refer the reader to any particular part of the insurance policy. An inquisitive and determined renter who had access to the policy would be required to examine it in its entirety including the numerous endorsements. After doing so he might or might not conclude that that portion defining who was insured was intended to clarify the unintelligible portion of the rental agreement. He would still be faced with the problem of relating "similarly" to the definition in some meaningful manner and we do not believe this can be done with any certainty.

■■■ Since Continental's policy was unintelligible with respect to a renter's authority to permit operation of a rented automobile by other persons, the trial court was correct in adopting the construction most favorable to the insured and in holding that

Juanita Jelich was operating the vehicle with the implied consent of the owner Federal Automotive Services Corp.[3]

■ It follows that both Lumbermens' and Continental's policies covered the operation of the automobile by Juanita Jelich at the time of the accident and that those companies must discharge all obligations created by their contracts of insurance.

Lumbermens contends that the trial court erred in not deciding the issue of whether its insurance was excess insurance over that furnished by the Continental policy and that certain exclusion provisions in the Continental policy were invalid under the Alaska Motor Vehicle Responsibility Act. Continental also urges that error was committed by the trial court in failing to rule on its claim of nonliability because of certain exclusions contained in its policy.

Lumbermens' present contentions were not mentioned in its complaint nor were they mentioned as issues in the court's pretrial order. The exclusions contained in Continental's policy were not made an issue by its original answer or counter and cross-claim nor were they stated to be an issue by the court's pre-trial order.

These claimed issues were not drawn to the trial court's attention during trial. At the conclusion of the trial oral argument was waived by the parties in favor of submitting trial briefs. No trial briefs were designated to be included in the record on appeal.

Under these circumstances it is hardly to be expected that the trial court would have rendered a decision on the issues counsel now want decided by this court.

■ We shall not attempt to consider on appeal matters that were not made issues in the trial court, by either the pleadings or the pre-trial order or that were not tried before the court.

The judgment below is affirmed.

3. Travelers Indemnity Co. v. Pray, 204 F. 2d 821, 823 (6th Cir., 1953).

ON PETITION FOR REHEARING

PER CURIAM:

In our opinion on the merits we mentioned that Continental had urged on appeal that the trial court erred in failing to rule on its claim of nonliability based on certain exclusions contained in its policy. We held that no error was committed because the claimed issues were not properly processed as such by Continental at the trial. Our opinion stated that this court would not attempt to consider on appeal matters that had not been made issues in the trial court, by either the pleadings or the pretrial order or that were not tried before the court.

Continental has petitioned for rehearing on the ground that this court overlooked portions of the record which specifically raised the issues of the exclusions. It contends the trial court should have decided the issues and failed to do so; that they were properly presented to this court on appeal and should have been considered and decided and that failure to decide the issues in a written decision setting forth the court's reasoning has resulted in a serious and substantial denial of justice to Continental.

We have re-examined the record with relation to Continental's references and find no reason to alter our comments.

Continental's answer consisted of admissions and general denials. In paragraph V of what was designated a "Counter Claim and Cross Claim"[1] it makes only one reference to exclusions in the following language:

"That the defendant Continental Casualty Company had on such date a policy in effect, insuring Federal Automotive Services, Inc., an Alaskan corporation, against certain risks and affording certain coverage in favor of drivers under contract with the said Federal Automotive Services, Inc., but exclud-

1. We put to one side any discussion of whether Continental was actually pleading a defense instead of a counterclaim and crossclaim. See Civ.R. 8(c).

ing all others and excluding coverage concerning drivers under contract under circumstances such as exist under the controversy in question and surrounding and involving the accident of October 20, 1960."

Paragraph VI of the "Counter Claim and Cross Claim" then alleged: "That the defendant's policy of insurance provides no coverage for any and all claims arising out of such accidents by its explicit terms and provisions of law."

The most that can be said for the above paragraphs is that they constitute notice that Continental will, at pre-trial or at trial, come forward and identify the particular exclusions upon which it intends to rely and point out to the court why they have the legal effect claimed.

As to applicable exclusions, Continental's pre-trial memorandum merely alleged:

The policy contained certain exclusions with regard to liability to passengers and to certain persons who were not covered as insured under the policy. These exclusionary provisions prevented coverage for Mr. Cummings and Juanita Jelich. And likewise the estate of Juanita Jelich.

The exclusionary provisions were still unidentified, not quoted, nor their applicability discussed.

The court's rather detailed pre-trial order made no mention of exclusionary clauses as a defense. The order did recite that Continental generally denied coverage and that it had made a counterclaim and cross-claim against the other parties. The pre-trial memorandum was made a part of the pre-trial order by incorporation and a copy of Continental's policy was accepted as an exhibit.

With the case at issue and the pleadings closed there was, as yet, nothing in the record to advise the trial judge which exclusion clauses Continental intended to rely on, where they might be found in the policy, and why they were considered applicable to the facts. It would have been impossible for the opposing parties or the trial judge to have prepared for trial on the issue of exclusions by studying the pleadings and memorandum and conducting legal research.

At trial, the opening statement of counsel for Lumbermens shed slightly more light on the matter of which exclusion clauses Continental intended to rely on when he said:

"With regard to Continental Casualty Company, Your Honor, Continental Casualty Company is relying on two exceptions or exclusions in their policy of insurance. One provides that there is no coverage for anyone who is not driving the vehicile (sic) with the permission of the owner, a standard clause found in all policies. The other exception they're relying on Your Honor, is an exclusion for suits brought by any passenger in the vehicle against the driver."

In his opening statement, counsel for Continental stated in part:

"Continental Casualty would take * * and the evidence will show that in its policy it described certain persons as insured; also, it has an exclusionary provision, as Mr. Delaney points out, with regard to, among other things, passenger claims against the operator, which Continental will rely upon."

The trial judge then interrupted counsel and the following transpired:

"The Court: Let me ask, are you contending in this case that the coverage is not good as to Cummings or as to—

"Mr. Thorsness: Yes, Yes, Your Honor, as to either one. As far as Continental Casualty is concerned, the policy does not cover either one."

The trial judge had a right to assume that at some point during the trial Continental would finally identify the exclusion provision, possibly quote it, and explain why "its explicit terms" applied "under circumstances such as exist under the controversy in question and surrounding and involving the accident of October 20, 1960" as it inferred

it would do in paragraphs V and VI of its "Counter Claim and Cross Claim". This did not happen. The exclusion provisions were not once mentioned during the course of the trial.

After all parties had rested the court was advised that all counsel desired to submit briefs rather than present oral argument. The court agreed.

Trial briefs were not designated to be included in the record on appeal. As a result of this petition we have brought up the entire record from below. From this file we learn that Continental filed a trial brief on the same day that the trial was concluded. The brief deals extensively with the issue of permission to drive the rented automobile, and cites numerous authorities. As to exclusions, it does for the first time in the proceedings identify at least one of the exclusions and quotes it. No authorities are cited and no discussion of its applicability to the facts of the case is offered. Continental later filed an additional trial brief. Nowhere in this brief was any mention made of exclusions.

In due time a 13 page written memorandum opinion was published by the trial court. The opinion decided those issues which had been developed during trial and in the trial briefs. It did not attempt to decide the legal effect of the exclusion mentioned above. The court file reveals that a copy of a proposed declaratory judgment was served on Continental on August 3, 1962. This judgment adopted the court's memorandum opinion as the findings of fact and conclusions of law in the case. No objection to the proposed judgment was filed by Continental within the time provided by Civil Rule 78 (b) and the judgment was signed by the judge on August 9, 1962. On August 30, 1962 Continental moved to modify the judgment and submitted proposed findings of fact, one of which would have found that Continental's policy "contained an exclusion as to passenger claims". The

exclusion was not quoted nor otherwise identified. The court denied Continental's motion on the ground that it had not raised the issue as to the exclusion.

 General pleading, such as that contained in the paragraphs just quoted, is permissible under our rules on the theory that an appropriate motion or use of the rules of discovery by the opposing parties will usually result in a full development of the issues before trial.[2] If this should not happen, as in this case, pre-trial procedure is intended to clearly define the issues to be tried before and decided by the trial judge. Here, counsel for Continental participated in the pre-trial conference and signed the pre-trial order. The order does not mention exclusions as an issue. It does incorporate the pre-trial memorandum by reference. But this memorandum merely refers to them as "certain exclusions" as to "certain persons", which prevented coverage for Cummings and Jelich.

 The purpose of pre-trial is to clearly define all issues to be tried and decided. Counsel have a particular responsibility to assist the court in this respect so that the pre-trial order in final form accomplishes its purpose. Hidden issues or defenses are not to be tolerated.[3]

Continental has no basis for complaint. The issue of the applicability of certain exclusions could and should have been clearly covered by the pre-trial order. Instead it remained obscured in the pleadings. The fault lies with Continental and not with the trial court.

 But even if it could be considered that the issue of exclusions survived the pre-trial order, it is obvious from the record that Continental failed to discharge its duty to the trial court. Exclusions were not mentioned during the trial. In a post trial brief, Continental for the first time quoted an exclusion and described where it might be found in the policy. No authorities were

---

**2.** See 2 Moore, Federal Practice § 8.13 (2d ed. 1962).

**3.** Burton v. Weyerhaeuser Timber Co., **1** F.R.D. 571, 573 (D.Ore.1941).

cited and no discussion of its applicability to the facts was offered.

Under such circumstances the trial court was fully warranted in holding that the issue had not been properly raised and in refusing to attempt to decide it.

This court will not consider on appeal matters that were not made issues in the trial court, by either the pleadings or the pre-trial order or that were not tried before the court.[4]

Rehearing is denied.

4. Ark-Tenn Distributing Corp. v. Breidt, 209 F.2d 359 (3d Cir. 1954); Palmer v. Wolff, 88 Cal.App.2d 979, 200 P.2d 167, 169 (1948); Pippin v. United States, 109 F.2d 960 (6th Cir. 1935); McComb v. Goldblatt Bros. Inc., 166 F.2d 387, 389–390 (7th Cir. 1948).